INDUSTRIAL SUPPLY COMPANY, Inc.,
Appellant,

v.

STOCKTON OIL COMPANY et al.,
Appellees.

No. 16758.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 7, 1966.

Rehearing Denied Nov. 18, 1966.

Nelson & Sherrod, and Stan Carter, Wichita Falls, for appellant.

Jennings, Montgomery & Dies, and Elton M. Montgomery, Graham, for appellees.

OPINION

LANGDON, Justice.

This is a venue case. The appellees, plaintiffs in the trial court, sued for damages resulting from the alleged conversion of personal property from an oil and gas leasehold estate situated in

Young County, Texas. The appellant, Industrial Supply Company, Inc., defendant in the trial court filed a plea of privilege asserting the right of trial in Wichita County, its residence and place of business. The plaintiffs filed controverting pleas contending the suit was properly filed and presented in Young County, Texas under Subdivisions 9 and 23 of Art. 1995, V.A. T.S. The trial court, following the venue hearing, overruled the defendant's plea of privilege and it has appealed from this ruling contending by its thirteen points of error that there was no evidence, insufficient evidence and no evidence of probative force that (1) it committed a trespass or conversion, (2) had actual or constructive notice of the lien of appellees, (3) nor that plaintiffs have a cause of action against it and that each of such findings would be contrary to the great weight and preponderance of the evidence and finally that it purchased the property in question from the lawful owner without notice of the claims of the plaintiffs. We affirm.

Plaintiffs, Stockton Oil Company and J. O. Chambers Oil Co., Inc., owned several leases in Young County, including the Matthews Lease. These leases and others were operated for the plaintiffs by Jimmy Prickett, who had on occasion ordered supplies and materials for the leases to the account of the plaintiffs. On June 24, 1964, the plaintiffs advised the defendant by letter as follows:

"This is to advise you that neither D. L. Garlington nor Jimmy Prickett any further has the privilege of charging to the Stockton Oil Company, Inc. or J. O. Chambers Oil Co., Inc. for any service rendered on or after June 1, 1964."

That the defendant received such letter has not been denied.

Some of the leases operated by Prickett, including the Matthews Lease, were sold by the plaintiffs to Prickett by assignment dated June 4, 1964, at 7:00 A.M. Con-temporaneously with the conveyance, Prickett gave the plaintiffs a purchase money note of $100,000.00 and a deed of trust on the leases (including the personal property) to secure the note.

Neither the assignment to Prickett nor the deed of trust from Prickett to the plaintiffs was recorded immediately. The assignment was filed on September 3, 1964, and the deed of trust on September 14, 1964. *Thus, at the time of the defendant's actions hereinafter described, the record title of these leases was in the plaintiffs to the exclusion of all other parties.*

On June 29, 1964, pursuant to the defendant's request and instructions, the Davis Trucking Company of Wichita Falls went to the Matthews Lease and thereupon dismantled and removed the pumping unit from the 1-A Well situated in Young County.

The pumping unit was hauled to the Wichita Falls yard of the defendant. Thereafter on July 2, 1964, the defendant credited the account of Jimmy Prickett with its wholesale value of $2,050.00. It is undisputed that this transaction was made by and on behalf of the defendant with its knowledge and approval through its duly authorized agents and officers acting in the course and scope of employment.

After taking possession of the pumping unit, the defendant exercised full dominion and control over it and appropriated it for its own uses and benefit. After some maintenance work, the defendant sold the unit to Allen & Parker of Perryton, Texas, for the sum of $3,500.00.

Thereafter, Prickett defaulted in the payment of the $100,000.00 note due the plaintiffs, and on October 6, 1964, the plaintiffs re-acquired the leases and equipment by deed from the Trustee pursuant to foreclosure proceedings under the deed of trust.

The venue rules for Subdivision 9 are the same as those for Subdivision 23, as

applied to the facts of this particular case. In 1 Texas Civil Practice (McDonald) 471 (§ 4.17.1) the rule is announced that, "Where the plaintiff seeks actual or nominal damages alleging an assault and battery, *conversion of personal property, infringement of his possession of real or personal property,* or similar intentional, forceful and direct invasions of his person or property, venue may be sustained under the 'trespass' aspect of exception 9. It is not necessary that the 'trespass,' to establish venue, violate the criminal laws. The exception applies in an action based on wrongful misappropriation of property, though the prayer be for recovery thereof rather than for damages. * * *

"Upon the venue hearing, plaintiff must establish by a preponderance of the evidence (a) that a trespass has been committed; (b) that it was committed in the county of suit; and (c) that the defendant asserting his privilege committed the acts, or that they were committed by another under circumstances that make the defendant legally responsible. Thus venue fails where the evidence, though sufficient to show that the person committing the trespass was an employee of the defendant, does not contain a showing that the employee was acting in the course of his employment at the time. These facts support a claim for nominal damages at least, so that it is not essential that actual damages be shown." (Emphasis added.)

█ It is undisputed that the personal property on which a lien was held by the plaintiffs was removed from Young County by the defendant Industrial Supply Company. At the time of its removal, since the plaintiffs were mortgagees, the acts of the defendant constituted an affirmative trespass (conversion).

"A chattel mortgagee may bring trover for the conversion of the mortgaged goods.

"Usually an action in trover for conversion is brought against the mortgagor and purchaser, since both may be jointly liable to the mortgagee, but anyone instrumental in disposition of the property in denial of the mortgagee's rights, or who causes or induces disposition of the property, may be held for conversion." 14 Tex.Jur.2d 54, "Conversion", § 59.

█ Appellant does not take issue with the principle above set forth. It seeks to avoid its application on the grounds that on June 29, 1964, at the time it moved the equipment from the lease, the plaintiffs had no lien rights of record and thus, defendant had no notice. The plaintiffs contend that since they held record title to the property on June 29, 1964, that failure to file the assignment and deed of trust is altogether immaterial and irrelevant on the question of notice. In this case notice is the basic element in determining whether the defendant's removal of the property constituted conversion. We find ample evidence in the record to support the trial court's judgment finding to the effect that the defendant was charged with notice of the plaintiffs' rights under the circumstances, and that the defendant is thus guilty of conversion.

At the time the defendant dealt with Prickett on removal of the property from the lease, Prickett did not hold record title to the lease. A check of the records would have reflected no right on the part of Prickett to trade or sell the property in question or to contract with reference to it. This fact considered in connection with the June 24, 1964 letter above set forth would be calculated to put any prudent person on notice that Prickett was without any legal right to charge goods or services to plaintiffs or to trade or sell its property. Therefore, the defendant is not in a position to claim that it was without notice.

In 38 Tex.Jur.2d 613, "Mechanic's Liens", § 54, it is stated: "Where the record title is in the name of a person other than the one who contracts, it is the duty of the contractor to inquire as to the ownership of the land. Where the inquiry would have

shown that the only title the person contracting could obtain was encumbered with a vendor's lien, the mechanic's lien is subordinate to the vendor's lien in the absence of a showing that the purchaser acted as agent for the vendor in making the contract. The lienholder's only remedy to defeat a rescission of an executory contract by the vendor holding a vendor's lien is to tender the balance of the unpaid purchase money."

Based on the state of the record as of June 29, 1964, the defendant was afforded constructive notice of the fact that Chambers and Stockton claimed the leases and equipment. When they contracted with Prickett at that time, they had the duty to inquire as to the ownership of the lease. Had they inquired pursuant to that duty, the defendant would have learned that, based upon documents off the record, Prickett did own the leases and equipment, but such ownership was subject to the rights of the plaintiffs as mortgagees. Therefore under the circumstances, the defendant cannot claim the benefits of "lack of notice".

One of the cases cited for the rule stated above from Tex.Jur.2d is Harveson v. Youngblood, 38 S.W.2d 781 (Com.App., 1931). In that case, as in this one neither the deed nor the mortgage was of record when the purchaser in the unrecorded deed contracted for improvements. In holding that the purchase money lien had priority over another lien, the court said: "It is contended by Youngblood that he had no notice of these matters. The record shows that Sprowls had no title to the lot at the time his contract was made—and for some time thereafter, but that the title thereto was vested of record in Rogers et al. Youngblood was charged with notice of what the record showed, and therefore knew that Sprowls had no title of record. This certainly put him on inquiry, and charged him with notice of what the inquiry would have disclosed."

See also Eardley Bros. v. Burt (Civ.App., 1916), 182 S.W. 721.

There is no evidence in this case that the defendant made any inquiry concerning the rights of the record owners of these leases, the plaintiffs. Had the defendant done so, the evidence is conclusive that it would have learned that the only title which Prickett could claim was subject to a purchase money lien in favor of Stockton and Chambers, securing payment of the sum of $100,000.00.

We have carefully reviewed the entire record in this case and are unable to find *any basis for the defendant's points of error* and they are each accordingly overruled and the judgment affirmed.