J. William ALLEN, Appellant,

v.

ALISON MORTGAGE INVESTMENT TRUST and the Woodbridge Corporation, Appellees.

No. 15662.

Court of Civil Appeals of Texas, San Antonio.

March 9, 1977.

John H. Marshall, Houston, for appellant.

Andrew L. Jefferson, Jr., Carnegie H. Mims, Jr., Jefferson, Maness, Valdes & Mims, Houston, for appellees.

KLINGEMAN, Justice.

J. William Allen, a resident of Harris County, Texas, appeals from an order of the District Court of Bexar County, Texas overruling his plea of privilege to be sued in the county of his residence. Suit was filed in Bexar County by Alison Mortgage Investment Trust (Alison) and the Woodbridge Corporation (Woodbridge) against Allen, Broadway National Bank (Broadway), and Aetna Insurance Co. (Aetna) seeking recovery in the sum of $28,097.00, the amount of a check issued by Aetna payable to Alison and Woodbridge for losses sustained in a fire on a condominium project in Bexar County, Texas. Allen filed his plea of privilege to be sued in Harris County, Texas. Alison and Woodbridge filed controverting affidavits asserting that venue is proper in Bexar County under Subds. 4, 7, and 9 of Art. 1995, Tex.Rev.Civ.Stat.Ann. (19—).[1] The trial court, after a hearing, overruled Allen's plea of privilege.

The condominium project involved was being constructed for Woodbridge. Woodbridge had given a deed of trust to Alison securing a large loan on the premises where the condominium unit was being constructed. The deed of trust contains a provision which provides that money collected from insurance policies on the project is to be applied as a credit on the indebtedness. Aetna was the insurer under a blanket policy which provides for fire and hazard insurance coverage. After a fire in one of the units occurred, a claim was made and Aetna issued a check for such claim in the amount of $28,097.00, made payable jointly to Alison and Woodbridge. The check was sent to Allen, then president of Woodbridge, on or about September 24, 1975. Such check was deposited in Broadway, with the deposit being made to the account of Woodbridge. Both the cancelled check and deposit slip were introduced into evidence. The back of the check contains a printed notation, "DRAFT MUST BE ENDORSED HERE BY ALL PAYEES." Under the notation someone had typed therein, "Alison Mortgage Investment and Trust"—"Woodbridge Corporation." Thereunder is a handwritten signature, "J. W. Allen, Pres." The deposit slip is dated September 24, 1975 and reflects a deposit of $28,097.00 to the account of Woodbridge.

There was introduced into evidence a check in the amount of $29,000.00, dated September 25, 1975, payable to J. W. Allen, drawn on the Woodbridge Corp., and signed by J. W. Allen. The back of the check contains the endorsement of J. W. Allen. There is testimony that Allen resigned as president of Woodbridge on Friday afternoon, September 26, 1975. An assistant vice president of Broadway testified that $28,097.00 was deposited into the Woodbridge account on September 24, 1975 and $29,000.00 withdrawn on September 25, 1975, and that the ending bank account for the month was $227.84. It was stipulated that the Aetna check was deposited in

Broadway to the account of Woodbridge and that it went through channels to the Hartford National Bank and Trust Co., who honored the draft and reduced Aetna's account in the amount of such check. It was stipulated that Broadway is a resident of Bexar County, Texas. Allen did not testify on the plea of privilege hearing.

■ No findings of fact or conclusions of law were requested of or filed by the trial court. Under such circumstances, a reviewing court must presume that the trial court resolved every disputed fact issue in favor of the winning party, and the judgment implies all necessary fact findings in support of the judgment. *Ford Motor Credit Co. v. Garcia*, 504 S.W.2d 931 (Tex.Civ.App. —San Antonio 1974, no writ); *Kimbell Milling Co. v. Marcet*, 449 S.W.2d 100 (Tex.Civ. App.—San Antonio 1969, no writ); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950); *North East Texas Motor Lines v. Dickson*, 148 Tex. 35, 219 S.W.2d 795 (1949).

Allen asserts that there is neither pleadings nor proof necessary to sustain venue in Bexar County, Texas under either Sub. 4 or Subd. 9; that there could be no conversion as to Alison because it was not the owner of the check involved;[2,3] that the evidence is legally and factually insufficient to constitute a conversion; and that the evidence is legally and factually insufficient to establish a cause of action against the resident defendant, Broadway.

The material allegations of plaintiffs' pleadings may be summarized as follows:

(a) Allen received the check in question; that he typed or caused to be typed on the back of the check, "Alison Mortgage Investment and Trust"—"Woodbridge Corpora-

tion"; that beneath the typed names he signed the check "J. W. Allen, Pres"; and that Allen was never president of Alison and had no authority to endorse checks for Alison.

(b) Defendant, Broadway, cashed the check on September 24, 1975 despite the fact that the check had two payees and only one endorser.

(c) The entire amount of the check was deposited to the Woodbridge Corp.; and that the following day Allen wrote a check to himself in the amount of $29,000.00, and shortly thereafter resigned as president of Woodbridge.

(d) The check was never sent to Alison nor did Alison ever receive any of its proceeds.

(e) Allen and Broadway both violated the terms and provisions of Art. 3.116 and Art. 3.404 of the Tex.Bus. & Comm.Code Ann. (1968), and in doing so exercised dominion and control over the check involved inconsistent with the rights of co-owner, Alison, and such actions constituted a conversion as a matter of law.

(f) Allen violated the terms and conditions of the contract between Alison and Woodbridge in that he failed to remit the proceeds of the check to Alison for credit on the indebtedness incurred by Woodbridge to finance the condominium project.

(g) Both Allen and Broadway committed a conversion by exercising dominion and control of the proceeds of the check in a manner inconsistent with the rights of Alison.

Plaintiffs incorporated their petition as a part of their controverting plea for all purposes and further summarize the allega-

---

**2.** Allen cites *Lone Star Beer, Inc. v. Republic Nat. Bank of Dallas*, 508 S.W.2d 686 (Tex.Civ. App.—Dallas 1974, no writ), and *Lone Star Beer, Inc. v. First National Bank of Odessa*, 468 S.W.2d 930 (Tex.Civ.App.—El Paso, 1971, no writ) to support his contention. The facts in the two *Lone Star* cases are basically similar. The Dallas and El Paso Courts of Civil Appeals ruled and held in each case that Lone Star Beer, Inc. could not recover against the collecting bank for conversion because the testimony

of the officers and directors of Lone Star Beer, Inc. repudiated any claim of ownership in the checks which the corporation alleged were converted. We have no such facts here. Alison asserts it is an owner of the check and proceeds, and there is nothing in the record to negate such claim.

**3.** *See Zidell v. John Hancock Mut. Life Ins. Co.*, 539 S.W.2d 162 (Tex.Civ.App.—Dallas 1976, no writ).

tions of the petition and alleged that venue is proper in Bexar County under Subd. 4 and Subd. 9 of Art. 1995; that the acts set forth and described constitute a conversion; that under Texas laws a conversion is a form of trespass; and that both Allen and Broadway are proper parties to this lawsuit.

Plaintiffs rely herein on both Subd. 4 and 9, Art. 1995.

Subd. 9 provides that a suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed by the defendant or by his agent or representative.

■ To sustain venue in Bexar County under Subd. 9, appellees had the burden of showing: (1) a trespass has been committed; (2) it was committed in the county of the suit; (3) the defendant asserting his privilege committed the act, or the act was committed by another under circumstances that made the defendant legally responsible. 1 McDonald Texas Civil Practice § 4.17.1, pp. 442, 443; *Sanderlin v. Dransfield*, 523 S.W.2d 794 (Tex.Civ.App.—Fort Worth 1975, no writ); *Industrial Supply Co. v. Stockton Oil Co.*, 408 S.W.2d 251 (Tex. Civ.App.—Fort Worth 1966, writ dism'd).

■ A conversion of personal property is a 'trespass' within the meaning of Subd. 9. *Conlee Seed Co. v. Brandvik*, 526 S.W.2d 795 (Tex.Civ.App.—Amarillo 1975, no writ); *Sanderlin v. Dransfield, supra; Loomis v. Sharp*, 519 S.W.2d 955 (Tex.Civ.App.—Texarkana 1975, writ dism'd); *Powell v. Forest Oil Corp.*, 392 S.W.2d 549 (Tex.Civ.App.—Texarkana 1965, no writ); 14 Tex.Jur.2d Conversion § 43 (1960).

■ To constitute a conversion it is not necessary that there be a manual taking of the property in question. The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex.1971); *American Surety Co. of New York v. Hill County*, 254 S.W. 241 (Tex.Civ.App.—Dallas) *affm'd*, 267 S.W. 265 (Tex.Comm.App.1924).

Art. 3.116, Tex.Bus. & Comm.Code Ann., provides in part that an instrument payable to the order of two or more persons "(2) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

Art. 3.419, Tex.Bus. & Comm.Code Ann., provides "(a) An instrument is converted when . . . (3) it is paid on a forged indorsement." [4]

In *Tubin v. Rabin*, 382 F.Supp. 193 (N.D. Tex.) *supplemented*, 389 F.Supp. 787 (N.D. Tex.1974), *affm'd*, 533 F.2d 255 (5th Cir. 1976), the Court recognized that the Texas law applied, and in holding that the defendant collecting bank was liable to the plaintiffs upon a conversion theory, stated:

When the defendant collecting bank paid the proceeds to a forger, the payee's specific wishes were not carried out and under § 3–419(1)(c) it converted the payee's funds.[5]

■ We have concluded that there is adequate proof of a conversion by both Allen and Broadway and that venue is sustainable in Bexar County, Texas under Subd. 9.

■ Subd. 4 of Art. 1995 provides that if two or more defendants reside in different

---

4. Comment 3, speaking of § 3–419(a)(3)'s purpose, says: "It adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion."

5. The Court quoted with approval from *Fidelity & Deposit Co. of Maryland v. Fort Worth Nat. Bank*, 65 S.W.2d 276 (Tex.Comm.App.1933), a case involving the forged endorsement of a company's check by an employee, wherein the Court said: "[A] collecting bank which accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery."

counties, suit may be brought in any county where one of the defendants reside. To prove venue in Bexar County under Subd. 4, appellees had the burden of proving three venue facts: (1) one defendant resides in the county of the suit; (2) the party asserting his privilege is at least a proper party to the claim against the resident defendant; (3) plaintiff has a bona-fide claim against the resident defendant. 1 McDonald Texas Civil Practice § 4.102, p. 434; *Zurich Insurance Co. v. Wiegers,* 527 S.W.2d 511 (Tex. Civ.App.—Austin 1975, no writ); *Town & Country Mobile Homes, Inc. v. Benfer,* 527 S.W.2d 523 (Tex.Civ.App.—San Antonio 1975, no writ); *Cage v. Guerra,* 511 S.W.2d 397 (Tex.Civ.App.—San Antonio 1974, no writ).

■ To maintain venue under Subd. 4, where two or more defendants reside in different counties in the county where one of the defendants resides, plaintiff must: (a) allege a joint cause of action against the resident and nonresident defendant, or a cause of action against the resident defendant so intimately connected with the cause of action against the nonresident defendant that the two may be joined to avoid a multiplicity of suits; (b) prove by independent evidence that the resident defendant in fact resides in such county; (c) introduce evidence at the venue hearing sufficient to establish the cause of action alleged against the resident defendant. *Stockyards Nat. Bank v. Maples,* 127 Tex. 633, 95 S.W.2d 1300 (1936); *Von Scheele v. Kugler-Morris General Contractors, Inc.,* 532 S.W.2d 375 (Tex.Civ.App.—Dallas 1975, no writ); *Ford Motor Credit Co. v. Garcia, supra.*

■ A defendant is a proper party under Subd. 4 where the plaintiff's petition shows that the cause of action against the resident defendant and the nonresident defendant grows out of the same transaction, or a

series of closely related transactions, and are so intimately connected that they should be joined to avoid a multiplicity of suits. *State Farm Mutual Automobile Insurance Co. v. White,* 461 S.W.2d 476, 479 (Tex.Civ.App.—Tyler 1970, no writ); *Stockyards Nat. Bank v. Maples, supra* ; 1 McDonald Texas Civil Practice § 4.10.2.[6]

The pleadings, taken as a whole, detail a series of events that assert a wrongful conversion by both the resident defendant, Broadway, and the nonresident defendant, Allen. Appellees also plead a violation of § 3.116 and § 3.419 of the Tex.Bus. & Comm.Code, both by the resident defendant and the nonresident defendant, and alleged a statutory conversion by such defendants.

The pleadings show a cause of action against Allen, the nonresident defendant, which entangles him in the controversy between plaintiffs and the resident defendant, Broadway; the cause of action against both grows out of the same transaction and is intimately connected.

■ It is undisputed that Broadway is a resident of Bexar County, Texas, the county of the suit. Under the record: (1) the nonresident defendant, Allen, is at least a proper party to the claim against the resident defendant, and (2) plaintiffs plead and proved a bona-fide claim against the resident defendant. We hold that appellees sufficiently plead and proved the necessary venue facts to maintain venue in Bexar County, Texas under Subd. 4 of Art. 1995.

Venue is maintainable against Allen in Bexar County, Texas under both Subd. 4 and 9, Art. 1995, Tex.Rev.Civ.Stat.Ann. The trial court did not err in overruling Allen's plea of privilege.

All of appellant's points of error have been considered, and all are overruled. The judgment is affirmed.

6. "There is a rational basis for accepting the allegations of the petition as sufficient proof under Subdivision 4 that the nonresident defendant is properly joined as a party to the suit. That subdivision . . . requires only that the suit be against two or more defendants, and there is no better proof of this fact than the petition itself. A nonresident defendant who is not a proper party to the suit is entitled to go out of the case on a plea of misjoinder, and hence is not prejudiced by permitting the plaintiff to maintain venue without proving by independent evidence that such defendant is a proper party." *Ladner v. Reliance Corp.,* 156 Tex. 158, 293 S.W.2d 758 (1956).