G. L. GILSTRAP, Appellant,

v.

Richard BEAKLEY and First National Bank of George West, Appellees.

No. 2566cv.

Court of Appeals of Texas, Corpus Christi.

June 3, 1982.

Michael Prince, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellant.

William E. Hooks, Jr., Huson, Clark, Hooks, Stephenson & O'Connor, San Antonio, Dwayne McWilliams, Schneider & McWilliams, George West, for appellees.

Before NYE, C. J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from an order overruling a plea of privilege. Appellee Richard Beakley sued appellant G. L. Gilstrap for fraud and the First National Bank of George West for negligence, alleging that the combined actions of these parties resulted in the loss of appellant's oil rig and other damages. Beakley brought the suit in Live Oak County, the residence of the Bank. The Bank brought a counterclaim against Beakley and a cross-claim against Gilstrap. Gilstrap filed pleas of privilege in response to the claims of Beakley and the Bank. From the trial court's order overruling the pleas of privilege, Gilstrap appeals. We affirm.

The testimony at the plea of privilege hearing described the following sequence of events. Richard Beakley, a resident of Bandera County, was the owner of an oil rig which he operated in Medina County. On February 5, 1979, he had financed the purchase of this rig by the execution of a promissory note in the principal amount of $65,000.00 and security agreement to the First National Bank of George West. The Bank retained the title document to the rig as part of this agreement. By February of 1980, Beakley still owed $50,000.00 on the rig. Because this rig was not suited for the type of drilling Beakley was doing, he contacted by telephone Gilstrap, president of Well Equipment Leasing and Well Machinery and Supply, Inc., to inquire about leasing a new rig. Later, Beakley visited Gilstrap in his office in Mineral Wells, Palo Pinto County. There the men looked at a new rig and spoke about a lease. Darrell Manley, Chairman of the Board of Well Equipment Leasing, was present in Mineral Wells when Beakley visited.

Beakley told the appellant that he had a rig and owed money on it. Beakley explained that he told Gilstrap about the old rig and the debt because he could not afford payments on both. Gilstrap told Beakley he would take the old rig, which Beakley believed meant a purchase. Beakley testified that he would not have agreed to lease a new rig without the sale of the old rig. Next, Beakley took Gilstrap to see the old rig in Hondo, where Beakley repeated his statement that he owed the bank $50,000.00 on it and Gilstrap said "okay."

On March 20, 1980, Gilstrap went to Beakley's home in Bandera County where the parties executed a lease for the new rig. Darrell Manley testified that the new rig was worth between $215,000.00 and $225,000.00. He said that in lieu of a cash down payment, Well Equipment Leasing accepted the old rig which it valued at between $40,000.00 and $50,000.00. To calculate the monthly rental, it deducted $45,000.00 from the $215,000.00 total lease price and arrived at a figure of $170,000.00, to be paid over the four-year duration of the lease. The leasing company realized the entire $170,000.00 at the outset of the lease because it financed the transaction with the Continental National Bank. Thus, the lease required Beakley to make monthly payments based on $170,000.00, plus 13% interest. At the end of the four-year period, Mr. Beakley had an option to purchase the rig for its fair

market value. The lease did not provide for application of any of the rental payments to the purchase price.

Beakley stated that he believed that he was selling his old rig for the amount he owed on it and apparently was unaware that its value was credited to his lease payment. There was nothing in writing about the trade-in of Beakley's rig. After executing the lease agreement, Beakley testified that he called the Bank in George West and told Brooks Schley, a Bank employee, that he would be selling the rig and that Gilstrap would come in with a check for $50,000.00. Schley confirmed this conversation, although he did not understand the name of the person who would be paying off the note. In addition, Schley mentioned that it was time for the Bank's annual inspection and appraisal of the rig, but Beakley told him that this was unnecessary since he thought the rig was sold. Schley told Beakley that it was necessary to sign the title document, and Beakley said that they could just bring it by his house and he would sign it.

Ross Harris, president of the First National Bank, testified that he had at least two conversations with Gilstrap. Gilstrap called to say the rig had been traded to him and asked Harris to find the serial numbers from his documents because they were illegible on the rig. In another conversation, Gilstrap informed Harris that he would come to the Bank to pick up the title. Harris was sure that nothing was said about paying the note or giving any consideration for the rig. On June 20, 1980, without contacting Beakley, Harris signed the title document and gave it to Gilstrap. From his conversation with Gilstrap, Harris received the impression that Beakley would be paying the note. When pressed to state a reason for releasing the title to Gilstrap, Mr. Harris said that he did it to satisfy a customer, and that Gilstrap had told him that he was taking the title to Beakley, who was ill. Harris knew that the remaining collateral was inadequate to secure the debt, but apparently relied upon Beakley's unblemished record with the Bank when he released the title.

Beakley was ill and was at his home when Gilstrap brought him the title documents in mid-July. Beakley asked whether Gilstrap had taken care of the Bank, to which Gilstrap replied in the affirmative. According to Beakley, based on that representation he signed the title.

Beakley began making payments on the lease in April of 1980. The Bank continued to collect payments for the note from him by debiting his checking account. He did not discover this was occurring until August. Harris also notified him that the note had not been paid. By January of 1981, Beakley was unable to afford the lease payments so the lease was cancelled.

Beakley instituted suit in Live Oak County, alleging that Gilstrap fraudulently represented that Well Equipment Leasing, Inc., would and did purchase the used rig for $50,000.00, which amount was to be applied against Beakley's note held by the Bank. He further alleged that he entered the lease agreement in reliance upon this false promise which caused him to lose the $50,000.00 rig, his livelihood and his credit. Beakley claimed that the Bank's acts were an unjustifiable impairment of the security of its note which constituted a lack of reasonable and ordinary care and resulted in damage to him. He requested a judgment of joint and several liability against the defendants.

Gilstrap then filed a plea of privilege to be sued in Palo Pinto County, the county of his residence. The plaintiff filed a controverting plea erroneously alleging that the Bank was located in "Frio County" and relying upon subdivisions 4, 7 and 29a of Tex.Rev.Civ.Stat.Ann. art. 1995 (Vernon 1964). The trial court permitted a trial amendment to correct the county of the Bank's residence to "Live Oak County." The Bank answered that the plaintiff's allegations failed to state a cause of action, and that Beakley was contributorily negligent or wholly responsible for the transfer of ownership. The Bank counterclaimed for the amount due under the defaulted promissory note, and cross-claimed against Gil-

strap for fraud. Gilstrap filed a plea of privilege to the cross-claim, and the Bank responded that subdivisions 4, 7 and 29a of Art. 1995 authorized venue in Live Oak County.

The appellant's first six points of error address the trial court's action in overruling the plea of privilege of Beakley. Points three through six concern subdivisions 7 and 29a. Beakley did not brief these points and conceded in his argument before this Court that subdivisions 7 and 29a were not applicable. Because we hold that venue is proper under subdivision 4, we need not address these points of error.

In points one and two, the appellant attacks a finding of venue on the basis of subdivision 4 by alleging that there was no pleading or proof of a cause of action against a resident defendant nor a joint cause of action against the appellant and a resident defendant.

Because findings of fact were neither requested nor filed, we must presume that the trial court resolved every issue of fact raised by the evidence in the plaintiff's favor. We view the evidence in the light most favorable to such findings, disregarding all that is contrary thereto. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.1968).

■ Subdivision 4 of Article 1995 provides, "If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides.…" In order to prevent a change of venue under subdivision 4, the plaintiff must (1) plead and prove that one defendant resides in the county of suit; (2) allege a joint cause of action against the resident and non-resident defendants or a cause of action against the resident defendant so intimately connected with the cause of action against the non-resident defendant that the two may be joined under the rule intended to avoid a multiplicity of suits; and (3) plead and prove a cause of action against the resident defendant. *Stockyards Nat. Bank v. Maples*, 127 Tex. 633, 95 S.W.2d 1300, 1302 (1936). Further, according to *Maples*, proof of the connection between the resident and non-resident defend-

ants is supplied by the allegations in the plaintiff's petition.

■ The appellant claims that Beakley did not plead that the Bank was a resident of Live Oak County because the petition mistakenly alleged that the residence of the Bank was in Frio County. Rule 66, T.R.C.P., authorizes the trial court to grant a trial amendment which we will not disturb in the absence of an abuse of discretion. *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). There is uncontroverted testimony that the Bank was a resident of Live Oak County. Therefore, we find that the plaintiff met the first requirement of subdivision 4.

■ To determine whether the second requirement is satisfied, we look to the allegations of the plaintiff's petition. Venue is proper if the petition shows that the cause of action against the resident and the non-resident defendants grow out of the same transaction, or a series of closely related transactions and are so intimately connected that they should be joined to avoid a multiplicity of suits. *Allen v. Alison Mortgage Investment Trust*, 548 S.W.2d 783 (Tex.Civ.App.—San Antonio 1977, no writ). The pleadings in this case show that the plaintiff lost his oil rig due to the combined actions of the parties. If the Bank had exercised due care or Gilstrap had refrained from misrepresenting the transaction, the plaintiff would not have sustained the damages alleged. We believe this is sufficient connection between the resident and non-resident defendant to satisfy the second requirement of subdivision 4.

■ The final requirement is to plead and prove a cause of action against the resident defendant. The appellant contends that the plaintiff failed to plead a cause of action. Rule 47, T.R.C.P., requires a pleading which sets forth a claim for relief to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." The Supreme Court has reiterated that the object and purpose of pleading is to give notice to an opponent

so that he may adequately prepare his defense. *Castleberry v. Goolsby Building Corp.*, 617 S.W.2d 665, 666 (Tex.1981). The facts alleged and the cause of action asserted in plaintiff's petition make it clear that Beakley is claiming that the failure of the bank to obtain payment on the note before releasing title constituted negligence. We hold that the pleading is sufficient.

It was incumbent upon the plaintiff to prove the negligence of the resident defendant by a preponderance of the evidence. *Head v. Newton*, 596 S.W.2d 209 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). A creditor in possession of property securing a debt owes a duty of ordinary care to secure and preserve the property. *The First National Bank, Giddings v. Helwig*, 464 S.W.2d 953, 955 (Tex.Civ.App. —Austin 1971, no writ). Both Beakley and Schley (of the Bank) testified that Beakley told Schley that someone would be coming in to pay off the note. When Gilstrap appeared at the Bank and requested the title documents, the Bank president signed it and gave it to him without demanding payment of the note or checking with Beakley. This constituted a breach of duty by the Bank which resulted in damages to the plaintiff. When viewed in the light most favorable to the judgment, the evidence establishes negligence. Beakley has satisfied all the requirements of subdivision 4 of Article 1995. Points of error one and two are overruled.

In his seventh through tenth points of error, the appellant complains of the trial court's ruling on his plea of privilege to the Bank's cross-action against him. In its cross-action, the Bank alleged that it relied upon Gilstrap's fraudulent representation that release of the title certificate would result in prompt payment of the note and, therefore, suffered damages in the amount of the unpaid balance of the note. This claim is obviously an attempt to determine liability for the loss of the rig as collateral and involves the same transaction and issues of law and fact as the plaintiff's claim. When the cross-claim has the same primary purpose, arises out of the same transaction and involves identical legal and factual issues as the plaintiff's claim, it may be maintained in the county of the primary action in order to avoid a multiplicity of suits. *Wallace v. Rockwell International*, 568 S.W.2d 404, 407 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Downing v. Laws*, 419 S.W.2d 217, 220 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). Therefore, the cross-claim may be maintained in Live Oak County.

We have carefully considered all of the appellant's points of error, and we overrule all of them.

The judgment of the trial court is affirmed.