**Rickey O'Keith JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–95–00029–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 7, 1995.

Decided Nov. 30, 1995.

Gary Young, McLaughlin, Hutchison, Hunt, Paris, for Appellant.

Tom Wells, County Attorney of Lamar County, M.C. Superville, Jr., Assistant County Attorney, Paris, for State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Rickey O'Keith Jackson appeals from a jury conviction for aggravated robbery for which he was sentenced to twenty years' confinement.

The jury was given two different factual accounts of the incidents surrounding the offense. The complainant, Bruce Anthony Ford, testified that on August 19, 1994, Jack-

son attempted to take property from the back of his flatbed pickup truck and, in the course of trying to escape, exhibited a pocketknife, which placed him in fear of deadly injury. Jackson admitted to trying to steal property from Ford's truck. Jackson testified, however, that he did not use or exhibit a knife and that Ford exhibited both a knife and a shotgun in trying to prevent him from fleeing the scene.

■■■ By his first point of error, Jackson contends that there is insufficient evidence to prove an essential element of his aggravated robbery conviction—that the pocketknife he allegedly used was a deadly weapon. This contention might be fairly said to question both the legal and factual sufficiency of the evidence. *See Green v. State*, 892 S.W.2d 220, 222 (Tex.App.—Texarkana 1995, pet. ref'd); *Lisai v. State*, 875 S.W.2d 35, 37 (Tex.App.—Texarkana 1994, pet. ref'd). In determining whether evidence is legally sufficient to support a verdict, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Nelson v. State*, 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993). In reviewing the factual sufficiency of the evidence, we look at all of the evidence and determine whether the conviction is so against the great weight of the evidence as to be manifestly unjust. *Bigby v. State*, 892 S.W.2d 864, 875 (Tex.Crim.App.1994); *Lisai*, 875 S.W.2d at 37. The trier of fact is free to accept or reject any or all of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Green*, 892 S.W.2d at 222.

■■■ A person commits robbery if, in the course of committing theft[1] as defined by Chapter 31 of the Texas Penal Code and with the intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a) (Vernon 1994). This offense becomes aggravated robbery when a person uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 1994). In the present case, the indictment alleged that Jackson used and exhibited[2] a pocketknife.

■■■ The Texas Penal Code defines deadly weapon as "anything manifestly designed ... for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17) (Vernon 1994). Texas courts have held that a knife is not per se a deadly weapon under this statute. *Thomas v. State*, 821 S.W.2d 616, 619 (Tex.Crim.App.1991); *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983); *Birl v. State*, 763 S.W.2d 860, 863 (Tex. App.—Texarkana 1988, no pet.). The State must therefore prove that the knife in this offense was, in the manner of its use or intended use, capable of causing death or serious bodily injury. *Victor v. State*, 874 S.W.2d 748, 751 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), *citing Thomas*, 821 S.W.2d at 620; *Birl*, 763 S.W.2d at 863.

■■■ The Texas Court of Criminal Appeals has listed the following factors that the State may use to prove that a knife was used as a deadly weapon in a given case: the size of the knife; the shape and sharpness of the

---

1. Texas courts have held that the language of Section 29.02 "in the course of committing theft" encompasses violence accompanying an escape immediately subsequent to a completed or attempted theft. *White v. State*, 671 S.W.2d 40, 42 (Tex.Crim.App.1984); *Thomas v. State*, 864 S.W.2d 193, 197 (Tex.App.—Texarkana 1993, pet. ref'd).

2. Section 29.03 of the Texas Penal Code requires that the defendant either use or exhibit a deadly

weapon. Texas courts have interpreted this to mean that the mere display of a deadly weapon can satisfy this requirement. *Maxwell v. State*, 756 S.W.2d 855, 858 (Tex.App.—Austin 1988, pet. ref'd); *see also Tisdale v. State*, 686 S.W.2d 110, 115 (Tex.Crim.App.1984) (stating that "advancing on [victim] and displaying the open knife" was sufficient to satisfy the statute); *Petrick v. State*, 832 S.W.2d 767, 770 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

knife; the manner in which the defendant used the knife; the intended use of the knife; and the knife's capacity to produce death or serious bodily injury. *Blain,* 647 S.W.2d at 294. The State does not have to introduce the knife into evidence to meet this burden. *Victor,* 874 S.W.2d at 751, *citing Morales v. State,* 633 S.W.2d 866, 868 (Tex.Crim.App. [Panel Op.] 1982). Nor is it necessary that the knife be used to inflict wounds. *Birl,* 763 S.W.2d at 863; *see Brown v. State,* 716 S.W.2d 939, 946 (Tex.Crim.App.1986). It is also not necessary for an express or implied threat to accompany the use of a knife for it to be deemed a deadly weapon. *Tisdale v. State,* 686 S.W.2d 110, 111–12 (Tex.Crim.App. 1984); *Vaughn v. State,* 634 S.W.2d 310, 311–12 (Tex.Crim.App.1982). The jury may consider all of the facts of the case, including the words of the defendant, when making this determination. *See Thomas,* 821 S.W.2d at 619; *Blain,* 647 S.W.2d at 294.

■ In the present case, Ford testified that as he was waiting to meet his wife in the lobby of Furrs Cafeteria in Paris, Texas, he saw Jackson removing property from the back of his truck. Ford testified that the property taken from him was valued at about $200 and included a house jack, bolt cutters, and a log chain. Ford then ran out of the restaurant towards his truck, drawing his pocketknife as he ran.[3] After seeing Jackson sitting in a car parked next to his truck, Ford approached Jackson and told him to "put my [Ford's] stuff back." Ford testified that Jackson said that he did not "have any stuff."

Ford testified that he then approached Jackson's car, put his drawn knife at Jackson's chest, placed his hand through the steering wheel, and turned off the ignition key. Ford then saw his property in Jackson's back seat and took Jackson's ignition key. Jackson then tried to make Ford put

the key back in the ignition and a struggle ensued. In the struggle, the knife closed on Ford's hand and cut his finger. Ford then reopened the knife on Jackson's arm and backed away from Jackson's car with Jackson's keys.

Jackson told Ford that he would put his property back and got out of his car. After returning Ford's property, Jackson asked Ford to return his keys. At this point, Ford realized that a log chain was missing from his truck and asked Jackson to return it. Ford testified that Jackson agreed and as Jackson returned to his car to get the chain, he reached into his pocket and pulled out a pocketknife. According to Ford, Jackson then opened the knife on his leg, racked[4] the chain against the bed of Ford's truck, and demanded that Ford give him his car keys. Ford testified that the pocketknife appeared to be four inches in length and three-eighths of an inch wide.

Ford refused to return Jackson's keys and said that he would "blow [Jackson's] head off." Ford then opened the door of his truck, pulled out a shotgun, and pointed it at Jackson. Jackson then dropped the chain, dropped down to the ground, crawled back to his car on his hands and knees, got into his car, and drove away.[5] Ford then called the police, told them that Jackson had attempted to rob him, and gave them Jackson's keys. Ford later identified Jackson in a photographic lineup at the police station. Jackson was arrested for this offense on October 7, 1994.

Ford testified in court that he had not given Jackson permission to take his property and that he was in fear for his life from the moment he saw Jackson do so because he did not know if Jackson had a weapon. He admitted, however, that Jackson did not

---

**3.** The Appellee's brief fails to mention that Ford pulled a knife. However, according to Ford's own testimony, he pulled the knife as he ran towards his truck at the beginning of the episode. Appellees brief, however, suggests that Ford pulled the knife only after Jackson reached into his car for the chain. This is clearly contrary to Ford's own testimony.

**4.** The witness used the word "rack." After much research, we have been unable to verify the

meaning of the word. From the testimony it appears that rack means to hit against a surface in a threatening manner.

**5.** The record is not clear on how Jackson drove away when Ford had his keys. Jackson testified that he did not have a second set, but that his ignition "wasn't on the locked position and I [Jackson] just started it up."

threaten him with imminent bodily injury until he refused to allow him to escape by giving him his keys. He also admitted that the cut on his finger was his own fault, was inflicted by his own knife, and that Jackson was not trying to cut him.

Ford's wife, Patricia Lynn Ford, testified that she saw Ford a few minutes after his altercation with Jackson and that he was very upset. She testified that he remained upset for "a couple of days" after the events.

Dwight A. Stewart was the patrolman who was called to the scene to investigate this occurrence. Officer Stewart testified that Ford gave him Jackson's license plate number and said that Jackson had waved the knife and chain at him. Although he testified that Ford was very anxious when he arrived, Stewart did not see the cut on Ford's finger.

Detective Jeff Springer constructed the photographic lineup that was shown to Ford. He testified that Ford identified Jackson within fifteen seconds of being shown the lineup. Springer then arrested Jackson on October 7, 1994. Springer also testified that, in his opinion, Jackson used the pocketknife in such a manner as to make it a deadly weapon under Texas law.

Jackson gave a different version of these events in his testimony. Although he admitted to trying to steal the house jack and the log chain, Jackson testified that he did not take bolt cutters from Ford's truck. Jackson testified that after he stole the property and as he attempted to drive away, Ford came after him with a knife. He also admitted that he denied to Ford that he had his property and that Ford subsequently took his car keys.

Jackson admitted that he agreed to give back the property upon Ford's next request, but testified that after he returned the property to Ford's car, Ford took his car keys from his ignition and said that he would blow Jackson's head off. Jackson testified that he made no aggressive moves toward Ford. After hearing Ford's threat, Jackson got back in his car and left. Jackson testified that the car started without his keys, although it does not normally do so.

Jackson further testified that Ford did not have his knife close to Jackson's body, Ford did not cut him with his knife, and that he did not know that Ford had cut his finger. Jackson also testified that he did not pull a knife on Ford that day,[6] does not know how to open a knife against his leg, and did not rack the chain against Ford's truck.

Jackson's common-law wife, Doris Ruth Williams, and mother, Marva Jackson, both testified that they had never seen Jackson carry a knife like the one Ford described.

Jackson contends, however, that the above testimony is insufficient as a matter of law because no actual injury was caused by the knife; the knife was never introduced into evidence; Ford admits that Jackson made no verbal threats; Jackson never pointed the knife at Ford; and the bed of the truck was between Jackson and Ford at the time Jackson displayed the knife.

In the cases in which the Texas Court of Criminal Appeals has found the evidence insufficient to prove that a knife was used as a deadly weapon, no wounds were inflicted, *Tisdale*, 686 S.W.2d 110; *Blain*, 647 S.W.2d 293; *Beller v. State*, 635 S.W.2d 739 (Tex. Crim.App. [Panel Op.] 1982); *Davidson v. State*, 602 S.W.2d 272 (Tex.Crim.App. [Panel Op.] 1980); *Alvarez v. State*, 566 S.W.2d 612 (Tex.Crim.App. [Panel Op.] 1978), and, in all but one case, the defendant made no effort to stab or cut the victim. *Tisdale*, 686 S.W.2d 110; *Blain*, 647 S.W.2d 293; *Beller*, 635 S.W.2d 739; *Davidson*, 602 S.W.2d 272. In two of the above cases, there was no testimony as to the size of the blade of the knife allegedly used by the defendant. *Blain*, 647 S.W.2d 293; *Beller*, 635 S.W.2d 739. In *Tisdale*, the knife was two and one-fourth inches long. In *Davidson* and *Alvarez*, the knives were six inches long.

In the present case, there was testimony by Ford that the knife was four inches long and three-eighths of an inch wide. Ford further testified that Jackson made threatening movements, i.e. racking the chain, after

---

6. Jackson does admit that he was carrying a pocketknife that day. ("a little old swiss knife, army knife"). He denies, however, that he used his knife.

he pulled the knife and that he was in fear for his life. Ford admitted, however, that Jackson made no threatening movements with the knife. Additionally, Ford suffered no wounds. These facts are consistent with the above cases finding the evidence legally insufficient to prove that a knife was used as a deadly weapon.[7] This point of error is sustained.

By his second point of error, Jackson contends that the evidence was insufficient to support the aggravated robbery conviction because there is no evidence to prove the complaining witness was in fear of imminent bodily injury or death. One of the elements of aggravated robbery is that the defendant commit a robbery as defined by Section 29.02 of the Texas Penal Code. TEX.PENAL CODE ANN. § 29.03. Section 29.02 states:

> (a) A person commits robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
>> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>>
>> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX.PENAL CODE ANN. § 29.02(a). Because Jackson's conduct did not cause imminent bodily injury or death to Ford, the State had to prove that Jackson intentionally or knowingly threatened or placed Ford in fear of imminent bodily injury or death.

When a robbery is committed by threat or placing another in fear, "that fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will." *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App.1989), *citing Cranford v. State*, 377 S.W.2d 957, 959 (Tex.Crim.App. 1964). This fear must arise from conduct of the defendant. *Cranford*, 377 S.W.2d at 959; *see also Devine*, 786 S.W.2d at 271 (stating that "some conduct on the part of the perpetrator is necessary to place the complainant in fear"). The appellate court must thus ask "if the words and conduct of the accused were sufficient to place a reasonable person in the victim's circumstances in fear of imminent bodily injury or death. *Welch v. State*, 880 S.W.2d 225, 226 (Tex.App.—Austin 1994, no pet.).

In the present case, there is testimony that Jackson held a pocketknife at his side and "racked" a chain against the bed of Ford's truck. Jackson argues that this was insufficient because there is no evidence that he made verbal threats or movements toward Ford. The question now becomes whether a reasonable jury could conclude that a person in Ford's position would fear imminent bodily injury or death.

Ford testified that he was in fear from the moment he saw Jackson take his property. Ford further testified that Jackson exhibited a pocketknife, opened it on his leg, "racked" the chain against the bed of Ford's truck, and demanded that Ford return his car keys so that he could escape. A reasonable jury could conclude that a reasonable person in Ford's position would fear imminent bodily injury or death. Therefore, the evidence was legally sufficient to prove the robbery element of intentionally or knowingly threatening or placing the victim in fear of imminent bodily injury or death. This point of error is overruled.

Based on our sustaining the first point of error, we reverse Jackson's conviction and remand this case to the trial court for a trial on the offense of robbery.

---

**7.** Because we hold that the evidence was legally insufficient to support a deadly weapon finding,