Charles V. HICKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00327–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 6, 1992.

Bruno A. Shimek, Bryan, for appellant.

Bill Turner, Stephen A. Gustitis, Bryan, for appellee.

Before DUGGAN, COHEN and PRICE,[1] JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of aggravated robbery, found two enhancement paragraphs of the indictment to be true, and assessed punishment at 50 years confinement. Appellant asserts three points of error. We affirm.

Kathy Martinez, a clerk at the Food 4 Less grocery store in Bryan, Texas, told Virgil Swanson, the assistant manager, that she observed appellant place some cigarettes in his pant leg. Swanson followed appellant, who was pushing a cart, and noted what appeared to be a carton of cigarettes concealed in his right pant leg. When Swanson confronted him, appellant told Swanson that he had placed the carton of cigarettes back on the register area.

Appellant continued to push his cart, and refused Swanson's request to accompany him to the store's office; instead, appellant entered the store's restroom. Swanson stood outside the closed restroom door and heard the trash can lid open and close. Swanson then opened the door to the restroom and saw appellant move his hand back from the trash can. After appellant came out of the restroom, Swanson looked inside the trash can and found a carton of Kool cigarettes that had not been there when Swanson had checked it about 10 minutes earlier. He also noted that appellant no longer appeared to be concealing anything in his right pant leg.

Swanson intercepted appellant in the store and told him he would have to come to the office. Without touching appellant, Swanson put his hand out across appellant's chest to prevent him from walking away. Appellant shoved Swanson, pulled a pocket knife out of his pocket, and said, "I'll tell you what I'm going to do." Appellant then placed the knife aside, walked down the aisle, and left the store.

Swanson described the knife as having a three to three-and-a-half inch blade that looked fairly sharp. He testified that appellant held the knife about two and a half feet from him, and that he was scared of being cut and dying. Sergeant Crenshaw testified that the knife admitted into evidence could easily injure or kill someone.

Two other store employees, Eric Ott and Roderick Davis, joined Swanson outside the store, and the three men followed appellant

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

through a gully, to a park, across residential yards, and back into the gully. Appellant pulled his knife on Davis twice, stating that he would cut him or hit him. Davis testified that he was afraid appellant would kill him. Appellant did not stop when commanded to by Officer Dean.

Appellant refused Officer Gideon's command to drop what was in his hand and lay down on the ground. The officer pulled out his nightstick and prepared to defend himself when appellant moved toward him. Appellant turned away and threw what the officer thought was a knife into the brush. Appellant was then arrested. Officer Walls, assisted by Davis, found the knife after a three-to-four minute search.

■ In appellant's first point of error, he asserts that the evidence is insufficient to support his conviction for aggravated robbery as alleged in the indictment. He contends, first, that there is no evidence to show that he had committed theft or was "in the course of committing theft." He argues that no evidence shows that he had any of the store's property when he brandished the knife, either while leaving the store or later. Thus, he reasons, because the State failed to show that he either attempted to commit or committed theft, there was no evidence of a threat to anyone "while in the course of committing theft of property."

■ The test for sufficiency of the evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

The trial court defined in its charge the term "in the course of committing theft," according to TEX.PENAL CODE ANN. § 29.01 (Vernon 1989), as "conduct that occur[ed] in an attempt to commit, during the commission, or in immediate flight after the commission of theft." The court defined "theft," in summary, as acquiring or exercising control over personal property, without the owner's effective consent, with the

intent to withhold the property from the owner permanently.

Swanson, the assistant manager, testified that he saw in appellant's right pant leg a bulge that appeared by its size and shape to be a carton of cigarettes, and that he confronted appellant, asked him to accompany him to the manager's office, and was rebuffed. Swanson stated that he saw appellant go into the restroom, and that when he heard the trash can lid open and close, he entered the restroom and saw appellant moving his hand away from the trash can. When appellant left the restroom, Swanson looked inside the trash can and saw the newly placed cigarette-carton. He also saw that appellant no longer had the cigarette carton-shaped bulge in his pant leg. This evidence was sufficient to show that appellant was "in the course of committing theft," that is, that he was engaged in "conduct [by appellant] that occur[ed] in an attempt to commit ... theft," even though he had not left the store's premises.

■ Secondly, appellant argues that no evidence shows he used a weapon to obtain or maintain control over the store's property. He points out that no State's witness contends he still possessed any of the store's property at the time the display of the weapon occurred. When a party, during immediate flight from the scene of a theft, places another in fear of immediate bodily injury or death in order to assure his escape, the violent conduct aggravates the act of theft, notwithstanding that control over the stolen property is relinquished in the process of escaping. *Banks v. State*, 638 S.W.2d 532, 534 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd). A rational jury could have concluded that, after appellant realized Swanson suspected he was stealing the carton of cigarettes, he discarded the carton in a restroom trash can and effectuated his escape by placing Swanson and Davis in imminent fear of death by brandishing a knife. Appellant's relinquishment of the carton of cigarettes before his escape did not negate the element of violent conduct necessary to establish aggravated robbery. *Banks*, 638 S.W.2d

at 534. Appellant's first point of error is overruled.

In appellant's second point of error, he asserts that there is insufficient evidence to show that the knife used in the offense was used in such a way as to constitute a deadly weapon. Article 1.07 of the TEX.PENAL CODE ANN. defines a deadly weapon as: (A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in its use is capable of causing death or serious bodily injury. A knife is not a deadly weapon per se, but can be classified as one through its intended use. *Moreno v. State*, 755 S.W.2d 866, 869 (Tex.Crim.App.1988). When serious bodily injury is not shown, the court must look to the manner of the knife's use or intended use, its size and shape, and its capacity to produce serious bodily injury to determine whether it was a deadly weapon. *Batro v. State*, 635 S.W.2d 156, 158 (Tex. App.—Houston [1st Dist.] 1982, no pet.). Testimony pertaining to the size of the blade, the blade's appearance of sharpness, the use of any brandishing motions, or the victim's fear of *serious* bodily injury or death, can all be offered to establish that a knife is a deadly weapon. *Witt v. State*, 745 S.W.2d 472, 473 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). A pocket knife with a three and one-half to four-inch blade is a deadly weapon under TEX.PENAL CODE ANN. section 1.07(a)(11)(B) (Vernon 1974) when its use or intended use is capable of causing death or serious bodily injury. *Cruz v. State*, 576 S.W.2d 841, 842 (Tex. Crim.App.1979). This Court previously found that a knife with a two and one-fourth-inch blade, waved within two feet of the victim is a deadly weapon. *Hicks v. State*, 723 S.W.2d 238, 239–40 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

We view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Appellant's knife had a three to three-and-a-half-inch,

fairly sharp blade. Officer Crenshaw testified that the knife could cause bodily injury or death. Swanson testified that appellant held the knife about two-and-a-half feet from him. Davis testified that appellant threatened to cut him with the knife. Testimony about the manner of the knife's use or intended use, its size and shape, and its capacity to produce serious bodily injury is sufficient to establish that the knife appellant used was a deadly weapon. *Batro*, 635 S.W.2d at 158. Additionally, both Davis and Swanson thought appellant could cause bodily injury or death with the knife; further substantiating that the knife was a deadly weapon. *Witt*, 745 S.W.2d at 473.

Appellant's second point of error is overruled.

In appellant's third point of error, he asserts that his trial counsel was ineffective. In support of this assertion, he points to his counsel's failure both to properly preserve a hearsay objection and to properly object when the district attorney commented in closing argument on appellant's right not to testify.

The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). While an isolated failure to object to certain procedural mistakes or improper evidence does not necessarily constitute ineffective assistance of counsel, *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984), a single error of omission by counsel may constitute impermissibly ineffective assistance. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991).

Thus, to obtain a reversal because of ineffective assistance, appellant must show: (1) that counsel's performance was so deficient that counsel was not function-

ing as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1984).

 Appellant urges that his trial counsel provided ineffective assistance of counsel by failing to request an instruction or mistrial after his hearsay objection was overruled. In order to preserve a complaint for appellate review, a party must present to the trial court a timely objection that specifically states the legal grounds for objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990); Tex.R.App.P. 52(a) (Vernon Pamp.1992). Where evidence is admissible for a limited purpose and the court admits it without limitation, the party opposing the evidence has the burden of requesting a limiting instruction. *Abdnor v. State*, 808 S.W.2d 476, 478 (Tex.Crim. App.1991).

As Swanson began to testify about his conversation with Martinez, appellant's trial counsel objected. The colloquy was as follows:

> State: All right. And what happened when—when Kathy [Martinez] came to—to see you?
>
> Swanson: She had told me that she had been watching—
>
> Trial Counsel: We object to hearsay, Your Honor.
>
> The Court: Sustained.
>
> State: May—may we approach, Your Honor?
>
> The Court: Yes, sir.
>
> State: Judge, if the witness is permitted to testify, he's going to testify about a statement made by Kathy Martinez that she had seen this defendant put some cigarettes in his sock.
>
> We're not offering this statement to prove that he put the cigarettes in his sock. We're only offering it to show the state of mind of the witness and that his actions after that conform with this belief. And there will be plenty of evidence later to indicate that he did have cigarettes in his sock.
>
> The jury can be instructed to consider that statement only for that limited purpose and not for the truth of the matter asserted.
>
> Trial Counsel: Hearsay, Your Honor. Ms. Martinez is on this witness list, and she's available.
>
> The Court: The state of mind of who?
>
> State: Of—of this witness, Your Honor.
>
> The Court: This witness didn't make the statement.
>
> Sustained.
>
> [The State then presented case law to support its contention that statements can be used to show the state of mind of the hearer to show the hearer acted in conformity with his or her belief. The State again emphasized the Court could give limiting instructions.]
>
> Trial Counsel: Judge, it's still hearsay. He—he has Ms. Martinez on his—on his witness list. He can call her first to establish what the state of mind and she can say that she told—made a statement to Mr. Swanson here. It's still hearsay. She made the statement.
>
> The Court: Overruled.

Appellant's trial counsel's objection was timely and specific because he objected to the alleged hearsay before the jury heard it, and he gave the trial court his rationale for claiming the testimony was hearsay. *Rezac*, 782 S.W.2d at 870. The trial judge overruled the trial counsel's timely and specific objection. Thus, the error, if any, in admitting the evidence was preserved, and there was no need for trial counsel to request an instruction to disregard, a mistrial, or for limiting instructions. Trial counsel was not deficient.

 We note that appellate counsel has not brought forward a point of error contending the trial judge erred in overruling the hearsay objection to Swanson's testimony about Martinez's statement. In the interest of justice, we will discuss this unassigned ground of error. *Carter v. State*, 656 S.W.2d 468, 469 (Tex.Crim.App.1983).

The instant case is similar to cases where a police officer testifies on how he happened upon the scene of a crime. General-

ly, it will be relevant for a testifying officer to relate how he happened upon the scene of a crime or accident; thus, it is permissible for him to testify that he was acting in response to "information received." *Schaffer v. State,* 777 S.W.2d 111, 114 (Tex.Crim.App.1989). However, a police office should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on grounds that he was entitled to tell the jury the information upon which he acted. *Id.* at 115. Accordingly, it was relevant for Swanson, the store's assistant manager, to testify that he decided to follow appellant because of information he received from his clerk. However, the clerk's actual statement was introduced for no other reason than to prove appellant concealed the carton of cigarettes in his pants leg. Thus, the trial court erred when it permitted Swanson to inform the jury of the contents of the clerk's statement. *Id.*

■ However, the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App. 1986); *East v. State,* 702 S.W.2d 606, 611 (Tex.Crim.App.1985); *Provost v. State,* 631 S.W.2d 173, 176 (Tex.App.—Houston [1st Dist.] 1981, pet. ref'd). Swanson's testimony also contained properly admitted circumstantial evidence that showed appellant's attempt to steal the carton of cigarettes. Thus, the improper admission of Martinez's hearsay statements did not constitute reversible error. *Anderson,* 717 S.W.2d at 628.

■ Appellant next urges that his trial counsel's failure to object to the district attorney's comment during closing arguments is a contributing factor to his claim of ineffective assistance of counsel. During closing arguments at the guilt stage, the district attorney said,

> Look at Mr. Van Hicks. Obviously, he's an elderly man. We don't know anything about his life. There was no evidence put on, but we don't know about

what his life was like. It may not have been very good.

In order to constitute a violation of the TEX.CODE CRIM.P.ANN. article 38.08 (Vernon 1979), the language must be either manifestly intended as, or of such a character that the jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Cook v. State,* 702 S.W.2d 597, 599 (Tex.Crim.App.1984). The challenged comment must be viewed from the standpoint of the jury and, to be proscribed, the language must be more than an implied or indirect allusion to the defendant's silence. *Id.* Comments on the accused's silence are judged first by their clear meaning, rather than their meaning in context. *Brown v. State,* 814 S.W.2d 477, 479 (Tex.App.—Dallas 1991, pet. ref'd). We evaluate comments that may infringe the accused's right to silence in context only when they are indirect or merely allude to the accused's failure to testify. *Id.*

■ Implied or indirect comments on the accused's failure to testify need not necessarily result in reversal. *Brown,* 814 S.W.2d at 479. A prosecutor's remark constitutes an impermissible comment on a defendant's failure to testify if the remark alludes to missing evidence that could only be supplied by defendant. *Cook v. State,* 702 S.W.2d 597, 600 (Tex.Crim.App.1984) (op. on reh'g). A prosecutor's indirect comment concerning the accused's failure to produce testimony from sources other than himself is not reversible. *Id.*

Appellant did not put on any witnesses during the guilt-innocence phase of the trial. Thus, the prosecutor could not have been referring to gaps in the testimony of any defense witness. This argument is especially objectionable because it refers to appellant's failure to produce evidence of "what his life was like," a type of evidence that would rarely be admissible at the guilt-innocence stage of trial. The prosecutor's argument was improper, and trial counsel should have objected.

■ We nevertheless hold that the failure to object does not constitute ineffective assistance of counsel. First, an isolated failure to object generally will not consti-

tute ineffective assistance; this is an isolated failure to object. Appellate counsel claims no other errors by trial counsel. Moreover, there is no reasonable probability that an objection would have led to a different result at the guilt-innocence stage of trial. The evidence of guilt was strong, and the argument is not so offensive that it probably interfered with the jury's ability to deliberate fairly and rationally. We overrule appellant's third point of error.

The judgment is affirmed.