COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

                                                                              )                    No. 
08-02-00105-CV

                                                                              )

                                                                  )                             Appeal from

IN THE MATTER OF:                                          )     

                                                                              )                     65th District Court

R.M., A JUVENILE.                                             )

                                                                              )                 of El Paso County, Texas

                                                                              )

                                                                              )                        (TC# 01,00747)

 

O
P I N I O N

 

R.M.,
a Juvenile, appeals from an adjudication order and disposition order.  A jury found R.M. engaged in delinquent
conduct by committing aggravated assault with a deadly weapon.  Following a disposition hearing, the juvenile
court placed R.M. on intensive supervised juvenile probation.  We affirm.

FACTUAL SUMMARY

On
July 26, 2001, the juvenile court placed R.M. on supervised juvenile probation
after he was found to have engaged in delinquent conduct by intentionally and
knowingly possessing an explosive weapon, a grenade.  As a condition of his probation, R.M. was
required to permit Noemi Ramos, a juvenile probation
officer, to visit in his home.  R.M.
filed a notice of appeal but he filed a document withdrawing his notice of
appeal on December 4, 2001.  This Court
issued a written opinion and judgment dismissing the appeal on January 11,
2002.








On
January 4, 2002, Ramos went to R.M.=s home for the purpose of conducting
her weekly home visit.  R.M. answered the
door and upon seeing Ramos simply stated AWhat?@  Ramos invited herself into the apartment and
noticed that R.M. was playing with two golf clubs.  She told R.M. that she needed to speak with
him and his mother together in the living room. 
R.M.=s
mother, who was in the kitchen, told Ramos that she would be with her
shortly.  Because the television located
in the dining area was extremely loud, Ramos asked R.M. to turn it off so that
she could talk.  R.M. refused, explaining
that he was recording a movie.  Ramos
then asked him to turn down the volume so that they could talk, but R.M.
refused this request as well.  Ramos
walked over to the television and turned it off.  R.M. turned the television back on and Ramos
turned it off.  Ramos then explained to
R.M.=s
mother why she had turned off the television. 
In the meantime, R.M. turned on the television again.  Ramos turned off the television a final time,
and when she looked up, she saw R.M. holding up one of the golf clubs and
looking her directly in the eye while yelling that he was going to kill
her.  Ramos described R.M. as having a
vicious look on his face and he held the golf club in a manner indicating that
he wanted to strike her.  Ramos quickly
walked out of the apartment and telephoned the police.  Ramos walked back to the apartment while
waiting for the police to arrive.  She
entered and stood in the living room with R.M.=s mother while he remained in the
dining area watching a movie.  The
officers arrived and talked to R.M. and Ramos about the incident.  








Johnny
Ferrer, an El Paso police officer, entered the
apartment and attempted to speak with R.M. 
who was in the dining area of the
apartment.  When Ferrer
asked R.M. to turn off the television so that they could talk, he blew up at Ferrer and said, AFuck
you, you can=t come in
here.@  Ferrer was at first
unsuccessful in his attempt to gain custody of the remote control, so he
attempted to turn off the television manually. 
At that point, Ferrer had to physically
restrain R.M. and another officer, Leo Quintana, handcuffed him.  Ferrer took custody
of the golf club found in the kitchen by Quintana and booked it into
evidence.  

On
January 11, 2002, the State filed a petition alleging that R.M. had committed
aggravated assault with a deadly weapon. 
It also filed a 
motion to modify disposition in the first case but later
dismissed that motion.  A jury found that
R.M. engaged in delinquent conduct by committing aggravated assault as alleged
in the petition.  The juvenile court
placed R.M. on intensive supervision probation. 


EXTRANEOUS OFFENSE

In
Points of Error Nos. One and Two, R.M. alleges that the juvenile court erred in
admitting evidence of extraneous offenses. 
He argues that the court should not have permitted Ramos to testify
about her employment as a juvenile probation officer or the purpose of her
visit to R.M.=s
home.

Prior
to trial, R.M. filed a motion in limine seeking to
prohibit the State from eliciting any evidence that Ramos was a juvenile
probation officer because it constituted proof of an extraneous offense.  At the hearing, the prosecutor informed the
juvenile court that it was necessary to show the purpose for Ramos= visit to R.M.=s home but the State had no intention
of going into the nature of the adjudication. 
The juvenile court ruled that the State would be permitted to show that
Ramos is a juvenile probation officer and she was at the home conducting
official business.   

When
Ramos testified before the jury that she was employed by the El Paso Juvenile
Probation Department, R.M. objected that permitting Ramos to identify herself
as a probation officer constituted evidence of an extraneous offense.  The juvenile court overruled the
objection.  Ramos then testified that she
was at R.M.=s
home on January 4, 2002 for the purpose of making a weekly home visit.  R.M. did not renew his objection to this
aspect of her testimony.  








Preservation of Error

Rule
33.1 of the Texas Rules of Appellate Procedure require a party to make a timely
and specific objection in order to complain of any error on appeal.  Tex.R.App.P. 33.1.  It is well-settled that the denial of a
motion in limine is not sufficient to preserve error
for review, but rather there must be a proper objection to the proffered
evidence.  McDuff v. State, 939
S.W.2d 607, 618 (Tex.Crim.App. 1997); Ortiz v.
State, 825 S.W.2d 537, 541 (Tex.App.--El Paso
1992, no pet.).  Although R.M.
objected to Ramos testifying that she was employed by the juvenile probation
department, he did not object when she stated her purpose for the visit to the
home.  Consequently, he preserved error
only with respect to the first question and answer.  See McDuff,
939 S.W.2d at 618; Geuder v. State, 76
S.W.3d 133, 136 (Tex.App.--Houston [14th Dist.] 2002,
pet. filed).

Ramos=
Employment by the Juvenile Probation Department

R.M.
asserts that the State introduced evidence showing that Ramos is a juvenile
probation officer.  Ramos testified that
she is employed by the juvenile probation department but she never stated in
the jury=s
presence that she is a juvenile probation officer.  R.M. failed to object when a police officer
subsequently identified Ramos as a Aprobationary
officer@ or Aprobation officer.@ 
The State argues that the evidence showing Ramos is employed by the
juvenile probation department would not necessarily have led the jury to
believe that R.M. had been placed on juvenile probation, and therefore, it is
not evidence of an extraneous offense. 
We agree.








To
constitute an extraneous offense, the evidence must show a crime or bad act,
and that the defendant was connected to it. 
Lockhart v. State, 847 S.W.2d 568, 573 (Tex.Crim.App.
1992), cert. denied, 510 U.S. 849, 114 S.Ct.
146, 126 L.Ed.2d 108 (1993); McKay v. State, 707 S.W.2d 23, 32 (Tex.Crim.App. 1985), cert. denied, 479 U.S. 871, 107
S.Ct. 239, 93 L.Ed.2d 164 (1986).  This necessarily includes some sort of extraneous
conduct on behalf of the defendant which forms part of the alleged extraneous
offense.  Harris v. State, 738
S.W.2d 207, 224 (Tex.Crim.App. 1986), cert. denied,
484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158
(1987).  If the evidence fails to show
that an offense was committed or that the accused was connected to the offense
then it is not evidence of an extraneous offense.   Moreno v. State, 858 S.W.2d 453,
463 (Tex.Crim.App. 1993); McKay, 707 S.W.2d at 32.  The juvenile court noted that the juvenile probation
department is involved with various programs involving youth in El Paso.  Consequently, the evidence showing that an
employee of the juvenile probation department visited R.M.=s home does not show that R.M. committed
an offense or bad act.  See Laca v. State, 893 S.W.2d 171, 186 (Tex.App.--El
Paso 1995, pet. ref=d)(statement indicating that defendant had been in detention
but showing nothing in regard to what, if any, offense had been committed by
defendant was not evidence of extraneous offense); see also Williams v.
State, 927 S.W.2d 752, 756 (Tex.App.--El Paso
1996, pet. ref=d)(admission
of defendant=s
affidavit of indigency did not show commission of
extraneous offense).  The trial court did
not abuse its discretion in admitting this evidence.  Points of Error Nos. One and Two are
overruled.

LEGAL AND FACTUAL SUFFICIENCY

In Point of Error No. Three, R.M. challenges the legal and
factual sufficiency of the evidence to support the jury=s
finding that he engaged in delinquent conduct by committing aggravated assault
with a deadly weapon.  More specifically,
he challenges the evidence supporting the jury=s
findings that he threatened Ramos with imminent bodily injury and he used or
exhibited a deadly weapon.

Standards of Review








When
reviewing challenges to the legal sufficiency of the evidence to establish the
elements of the penal offense that forms the basis of the finding that the
juvenile engaged in delinquent conduct, we apply the standard set forth in Jackson
v. Virginia, 443 U.S. 307, 320, 99 S.Ct. 2781,
2789‑90, 61 L.Ed.2d 560 (1979).  In the Matter of A.S., 954 S.W.2d 855, 858 (Tex.App.--El Paso 1997, no pet.).  Under this standard, an appellate court must
review all the evidence, both State and defense, in the light most favorable to
the verdict to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson,
443 U.S. at 318-19, 99 S.Ct. at 2789; Alvarado v.
State, 912 S.W.2d 199, 207 (Tex.Crim.App. 1995).

In
reviewing this factual sufficiency challenge, we view all of the evidence but
do not view it in the light most favorable to the verdict in determining
whether the State met its burden of proof beyond a reasonable doubt.  A.S., 954 S.W.2d at 860; see also Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). 
Only if the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust will we conclude that the State
failed to carry its burden.  A.S.,
954 S.W.2d at 860.

Elements of the Offense

A
person commits aggravated assault with a deadly weapon if he intentionally or
knowingly threatens another with imminent bodily injury and he uses or exhibits
a deadly weapon during the commission of the assault.  Tex.Pen.Code
Ann. '22.02(a)(2)(Vernon 1994). 
The State=s
petition tracked the language of this section of the Penal Code, alleging that
R.M. threatened Ramos with imminent bodily injury and used or exhibited a
deadly weapon, namely, a golf club. 
Further, the court=s
charge properly submitted this issue to the jury.  

Imminent Bodily Injury








Citing
Gaston v. State, 672 S.W.2d 819 (Tex.App.--Dallas
1983, no pet.), R.M. argues that the State failed to prove that Ramos believed
she was in imminent danger of serious bodily injury since she voluntarily went
back into the apartment.[1]  In Gaston, the defendant, holding a
sawed-off shotgun, entered the freezer of the restaurant where the complainant
worked.  The complainant screamed and the
defendant approached her.  He did not
verbally threaten her or point the gun at her but instead held it by his side,
and placed one hand over her mouth while telling her to Ahush.@ 
The defendant then removed his hand from the complainant=s mouth and she asked him not to shoot
her.  When a co-worker opened the door,
the defendant fled the premises.  On
appeal from his conviction for aggravated assault with a deadly weapon, the
court of appeals found the evidence sufficient to show that the defendant used
a deadly weapon even though he made no physical motion to employ the weapon and
did not verbally threaten the victim.  Gaston,
672 S.W.2d at 822. 
In summarizing the evidence, the court noted that the assault victim
justifiably felt threatened with imminent bodily injury under these facts.  The Gaston court was not faced with a
challenge to the sufficiency of the evidence proving a threat of imminent
bodily injury and we do not read the opinion as holding that the State must
prove that the victim reasonably felt threatened by the defendant=s conduct in order to prove imminent
bodily injury.  Further, Section 22.02(a)(2) does not place this burden on the State.  The State is only required to show that the
defendant threatened the complainant with imminent bodily injury.








In
both assault and robbery cases involving a threat of imminent
bodily injury, the term Aimminent@ has been interpreted as meaning
Aon the verge of happening@ or Anear
at hand.@  See Devine v. State, 786 S.W.2d 268, 270
(Tex.Crim.App. 1989)(robbery);
Hill v. State, 844 S.W.2d 937, 938 (Tex.App.--Eastland
1992, no pet.)(aggravated assault).[2]  Black=s
Law Dictionary defines Aimminent@ as meaning Anear
at hand@ and Aon the point of happening.@ 
Black=s Law Dictionary 676 (5th ed. 1979).  Thus, the term Aimminent@ refers to a present, not a future,
threat of bodily injury.  See Devine,
786 S.W.2d at 270.  R.M., standing only
four to five feet from Ramos and while holding a golf club in a threatening
manner and yelling, stated to Ramos that Ahe
was going to fucking kill [her].@  This is a threat of present, not future
bodily injury.  Consequently, we find the
evidence is legally sufficient to prove that R.M. threatened Ramos with
imminent bodily injury.  See Rogers v.
State, 877 S.W.2d 498, 500 (Tex.App.--Fort Worth
1994, pet. ref=d)(evidence supported finding that defendant threatened
aggravated assault victim with imminent bodily injury where defendant insisted
that victim cash defendant=s
money order, defendant moved within two feet of victim and drew knife, and
defendant threatened to cut off victim=s
head); see also Green v. State, 567 S.W.2d 211, 212-13 (Tex.Crim.App. [Panel Op.] 1978)(in
robbery case, defendant=s
statement AIf you
don=t give me the money, I=m going to cave your head in@ constituted a threat of imminent
bodily injury).

With
respect to the factual sufficiency of the evidence to prove this same element,
R.M.=s
mother testified that she did not hear her son yell or threaten Ramos either
verbally or by raising the golf club. 
She believed Ramos had made up the story because she did not like
R.M.  After reviewing all of the
evidence, including the testimony of R.M.=s mother, we cannot say that the jury=s verdict is contrary to the
overwhelming weight of the evidence.








Use or Exhibit a Deadly Weapon

R.M.
next argues that the evidence is insufficient to show that he used or exhibited
a deadly weapon because the trial court did not admit the golf club into
evidence and the officers=
testimony failed to establish that a golf club is capable of causing death or
serious bodily injury.  Although R.M.
makes much of the State=s
failure to successfully introduce the golf club into evidence, the State is not
required to do so in order to prove the challenged element.[3]  See Jackson v. State,
913 S.W.2d 695, 698 (Tex.App.--Texarkana 1995, no
pet.); Victor v. State, 874 S.W.2d 748, 751 (Tex.App.--Houston
[1st Dist.] 1994, pet. ref=d).  Therefore, we will restrict our review to
whether the State proved that the golf club is a deadly weapon. 

The
Penal Code defines a deadly weapon as:

(A)  a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury;
or

 

(B)  anything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.

 

Tex.Pen.Code Ann. '
1.07(a)(17)(A)(B)(Vernon 1994).  

A
golf club is not designed, made or adapted for the purpose of inflicting death
or serious bodily injury, and therefore, it is not a deadly weapon per se
as defined under Section 1.07(a)(17)(A). 
Items that are not deadly weapons per se have been found to be
deadly weapons by reason of their use or intended use under Section
1.07(a)(17)(B).  Hill
v. State, 913 S.W.2d 581, 582 (Tex.Crim.App.
1996).  Their use or intended use
must be capable of causing death or serious bodily injury.  Id.








It
is not necessary that the State show that R.M. actually used the golf club in a
deadly manner or that the golf club actually caused serious bodily injury.  Under the above authorities, the State must
show only that R.M. used or intended to use the golf club in a manner which
caused or had the potential to cause death or serious bodily injury.  The jury may consider all of the facts in
determining whether a weapon is deadly, including the words of the accused, the
intended use of the weapon, the size and shape of the weapon, the testimony of
the victim, the severity of the wounds inflicted, and testimony as to the
weapon=s
potential for deadliness.  Bui v. State, 964 S.W.2d 335, 343 (Tex.App.‑‑Texarkana
1998, pet. ref=d); Hicks
v. State, 837 S.W.2d 686, 690 (Tex.App.--Houston
[1st Dist.] 1992, no pet). 
Further, the jury may infer intent to use an object in a deadly manner
from the acts or words of the defendant. 
See Parrish v. State, 647 S.W.2d 8, 10‑11 (Tex.App.‑‑Houston [14th Dist.] 1982, no pet.).

Ramos
testified that R.M., who stood only four or five feet from her, yelled and
threatened to kill her while holding the golf club over his head in a manner
indicating he wanted to strike her with it. 
Officer Ferrer, whose training included the
identification of deadly weapons, offered his expert opinion that a golf club
could cause death or serious bodily injury. 
It could be used as a blunt object to strike another person and in that
manner of use could cause serious bodily injury.  Ferrer had actually
responded to one case in which a husband had struck his wife with a golf
club.  The jury could have rationally
found that R.M. intended to use the golf club in a deadly manner and that the
golf club, in the manner of its intended use, had the potential of causing
death or serious bodily injury. 
Therefore, the evidence is legally sufficient.








R.M.
offered no evidence to contradict Ferrer=s expert opinion.  Our review of the evidence regarding this
element does not show that the jury=s
verdict is contrary to the overwhelming weight of the evidence.  Because the evidence is legally and factually
sufficient to support the jury=s
determination that R.M. committed aggravated assault as alleged in the State=s petition, we overrule Point of Error
No. Three.  The
adjudication and disposition orders are affirmed.

 

 

December 19, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)











[1]  The juvenile
court excluded the State=s efforts to show why Ramos went back into the
apartment.





[2]  Although we
may properly look to the definition of Athreaten
imminent bodily injury@ used in the context of robbery cases, we draw a
distinction between those robbery cases involving an allegation that the
defendant placed another in fear of imminent bodily injury and those
alleging that the defendant threatened imminent bodily injury.  The former allegation pertains to a general,
passive requirement that another be placed in fear and it cannot be equated
with the specific, active requirement that the actor threaten another with
imminent bodily injury.  See Williams v. State, 827 S.W.2d 614, 616 (Tex.App.--Houston [1st Dist.] 1992, pet. ref=d).





[3]  The trial
court refused to admit the golf club because the State failed to establish the
chain of custody.