**AFFIRM; and Opinion Filed April 14, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00259-CR

**THOMAS JASON THOMPSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-81178-2011**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Lewis

A jury convicted appellant Thomas Jason Thompson of aggravated assault with a deadly weapon and assessed his punishment at ten years' confinement. Appellant contends the evidence is insufficient to support his conviction. Because this issue involves the application of well-settled principles of law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4. We affirm the trial court's judgment.

### Background

The State charged appellant with assaulting Marshall Bowman ("Marshall") by stabbing him in the leg.[1] Appellant does not contest the stabbing, but he contends he acted in self-defense. Marshall is a son of Denise Bowman ("Denise"), with whom appellant had a long-term,

---

[1] This appeal involves several members of the Bowman family, so we refer to those individuals by their first names.

off-and-on romantic relationship. Marshall and his brother, Skylar Bowman ("Skylar"), disapproved of their mother's relationship with appellant because she was still married to their father and because she was significantly older than appellant.

On the evening of the stabbing, Marshall and his wife, Linnzi Ingram, and their two children were visiting Denise. Denise and Ingram both testified that Denise had asked Ingram to come over because appellant had been making threatening telephone calls ever since Denise had broken off their affair days earlier. Marshall had joined them after work, but after a period of time, he drove off without telling his wife and mother why. Marshall initially told the detective investigating this case that he left the house to buy gasoline. At trial he testified the reason had been a telephone call from appellant, which Marshall understood to be a challenge for him to come to a certain address to fight appellant. Appellant's cousin Aaron Manley drove appellant to Denise's house that evening so appellant could see Denise. The two men arrived shortly after Marshall had left. Ingram testified she was outside retrieving her cell phone from her car when Manley and appellant drove up. Appellant was acquainted with Ingram, and the two of them walked to the back door together. Appellant knocked repeatedly, calling for Denise to open the door. She did not answer. As appellant walked away from the door, Marshall returned. He parked his car and ran toward appellant, telling appellant to leave. Marshall testified he believed appellant wanted to fight, but he concedes he (Marshall) threw the first punch. The two men then scuffled and fought for a period of time. At one point they appeared to have reached a standstill and broke apart, but they started in again. Ingram and Manley testified they watched the fight as the two participants moved to the deck by the back door of the house.

At some point, Marshall's brother Skylar arrived and joined the fight. The testimony is conflicting as to whether Manley also did more than watch. Manley testified on appellant's behalf. He stated Skylar charged at him and knocked him off the deck, but that he told Skylar he

–2–

was not involved, and Skylar turned his attention to appellant. Manley testified repeatedly that he had not wanted to be involved in any fighting or any trouble because he had a family to take care of and was not willing to risk going to jail. He stated he decided to leave after he learned the police had been called, and that he called to appellant to come with him. But, according to Manley, appellant was being held down by Marshall, Skylar, and Denise, who had come out of the house and was hitting appellant in the head repeatedly with a telephone.

Marshall and Ingram both testified that when the fight was still limited to appellant and Marshall, Manley approached as if he were going to fight Marshall too so Marshall ran away from appellant and Manley. Marshall tried to go inside the house, but the back door was locked. When Marshall turned around, appellant stabbed him twice. In what was described by witnesses as the chaos that followed, appellant attempted to leave. Skylar, with Marshall's help, stopped him. Neighbors who heard the noise arrived and held appellant down until police arrived.

Appellant and Marshall were taken to Medical Center of McKinney Hospital caregivers were unable to control Marshall's bleeding, and they transferred him to Parkland Hospital. Marshall underwent surgery and remained in the hospital for a week.

Appellant was charged with aggravated assault with a deadly weapon. The jury found him guilty and assessed a ten-year sentence. He appeals.

### Self-Defense

Appellant contends the evidence is insufficient to support his conviction for aggravated assault with a deadly weapon. He argues that he was not the aggressor in the fight and that he was attacked by Marshall, Skylar, and Denise. As a result, he contends, "the use of the knife was necessary to stop the fight and to protect [himself]."

*Standard of Review*

When an appellant urges a sufficiency challenge on the basis of his claim of self-defense, we do not look to whether the State presented evidence that refuted self-defense. Instead, we determine, after viewing all the evidence in the light most favorable to the prosecution, whether any rational trier of fact (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). As always, the jury's duty is to determine the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Our duty is to ensure the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

*Findings on the Essential Elements of the Offense*

In this case, the State was required to prove that appellant intentionally, knowingly, or recklessly caused bodily injury to Marshall by stabbing him in the leg, and that appellant used or exhibited a deadly weapon—here, a knife—during the commission of that act. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). The evidence is undisputed that Marshall was stabbed in the leg and that appellant was the person who stabbed him. And when Marshall argues in his brief that his use of the knife was "necessary to stop the fight and to protect [himself]," he essentially concedes the stabbing was performed knowingly.

Appellant correctly states that a knife is not a deadly weapon per se, although it may be one through the manner of its use. *See, e.g., Williams v. State*, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979). A knife will be classified as a deadly weapon if, in the manner of its use, it is capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

"Serious bodily injury" includes an injury that creates "protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). In this case, the officer who found the knife at the scene testified its blade was approximately three-and-one-half inches long. The record also contains evidence of the wounds actually inflicted by the knife. Marshall was taken immediately to the nearby hospital, and Lieutenant Steve Riley followed to see Marshall and determine his injuries. Riley testified Marshall had two wounds: one to the back of the leg and one to the lower abdomen. Riley testified he was concerned at the time that the knife might have nicked Marshall's femoral artery. Riley reported hospital caregivers were "really concerned about stopping the blood flow," and they ultimately transferred Marshall to Parkland Hospital where he underwent surgery to resolve the bleeding issue. In all, Marshall spent a week in the hospital. Riley also testified he collected Marshall's clothing at the hospital; he described the clothes as "nearly soaked" with blood. Based on this evidence, rational jurors could have concluded the knife was capable of causing, and in fact had caused, serious bodily injury. *See, e.g., Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008) (evidence knife wound was in vulnerable area and could have resulted in severing major blood vessel or nerve supported finding that weapon was capable of causing serious bodily injury or death); *Hicks v. State*, 837 S.W.2d 686, 690 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (knife with three to three-and-one-half inch blade was deadly weapon when used to threaten complainant).

We conclude a rational jury could have found the essential elements of aggravated assault beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

*Findings on Self-Defense*

It is a defense under the Texas Penal Code that the conduct at issue was justified. TEX. PENAL CODE ANN. § 9.02. A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32(a). A jury's verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Saxton*, 804 S.W.2d at 914.

Our review of the record identified no evidence that any fight participant other than appellant ever exhibited or used a weapon—other than fists and a telephone—in the fight that day. Moreover, both Marshall and Ingram testified that Marshall had abandoned the fight before appellant stabbed him. Both witnesses testified that when Manley appeared to be joining the fight on appellant's side, Marshall ran away. He attempted to enter the house through the back door, only to find it locked from inside. When he turned back around, appellant stabbed him twice. The jury could have rejected the argument that appellant reasonably believed he needed to employ a weapon and deadly force to protect himself, especially if they believed Marshall was attempting to abandon the fight and appellant was pursuing him with that weapon.

Appellant stresses that Marshall threw the first punch in the fight. And Manley's testimony was not consistent with the testimony of Marshall and Ingram. Manley testified he never attempted to join the fight and that he decided to leave when he learned police had been called. He stated that when he left, appellant was essentially pinned down by all three of the

–6–

Bowmans: Denise, Marshall, and Skylar. Manley testified appellant could not have gotten up, and that no one had been stabbed when he left the premises.

The jury resolves any conflicts in the evidence and is free to accept or reject any and all of the defensive evidence. *Wise*, 364 S.W.3d at 903; *Saxton*, 804 S.W.2d at 914. In this case, the jury was entitled to believe the testimony of Ingram and Marshall and to disbelieve Manley's version of events. After viewing all the evidence in the light most favorable to the prosecution, we conclude a rational jury could have found against the appellant on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

We conclude sufficient evidence supports appellant's conviction, and we overrule his single appellate issue.

### Conclusion

We affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120259F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THOMAS JASON THOMPSON, Appellant

No. 05-12-00259-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 296-81178-2011.
Opinion delivered by Justice Lewis.
Justices Francis and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 14th day of April, 2014.

/David Lewis/

DAVID LEWIS
JUSTICE