**Affirmed and Memorandum Opinion filed May 30, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00641-CR

---

### JOHN DOUGLAS OSBY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1504556**

---

### MEMORANDUM OPINION

Appellant John Douglas Osby appeals from his aggravated-robbery conviction. *See* Tex. Penal Code § 29.03(a)(2). A jury found appellant guilty and assessed punishment at incarceration for fifteen years in the Institutional Division of the Texas Department of Criminal Justice. In two issues, appellant argues his conviction should be reversed and a new trial ordered because the trial court erroneously allowed the admission of an extraneous offense, and, in the alternative, appellant received ineffective assistance of counsel. We affirm.

BACKGROUND

The complainant, Alfonso Olivares, and his co-worker, Franklin Rogers, were replacing a sewer line while working for Portland Construction near the intersection of Link and Main in Houston. After lunch, while Olivares operated a large winch used to pull pipes, a black Hyundai sedan stopped next to where he was working. Because vehicles often stop and ask what type of work the crew is doing Olivares walked over to the vehicle. A man immediately exited from the back-passenger door of the vehicle and picked up a pipe saw belonging to Olivares' employer. When Olivares tried to take the pipe saw back, the man pulled out a gun and aimed it at Olivares' forehead. Olivares moved back behind the machine and called out to his co-worker Rogers, who then came into view.

As Rogers came into view, the man pointed the gun at Rogers. At that point, the driver of the sedan opened his door and also pointed a gun at Rogers, though the driver did not exit the vehicle. Rogers saw the driver's face and noted a swirled "M" tattoo on the driver's neck, and that the driver was wearing a black t-shirt, black hat with green lining, and black and green shoes. The driver was described as a light-skinned black male 5'8" to 5'11" tall. The two men took the pipe saw into the vehicle and drove away. As the sedan drove away, Olivares typed the license tag of the sedan into his phone. The tag was a temporary paper tag from a dealer and bore the number 13K3380.

Detective Senior Police Officer G. Goodnight was assigned to investigate the robbery. Goodnight developed appellant as a suspect through appellant's status as the suspect in an evading arrest incident that occurred a few days after the theft of the pipe saw. In the evading arrest incident, another police officer observed appellant driving a black Hyundai sedan with paper license tag number 13K3380 at a fast rate down a residential street. The officer attempted a traffic stop, but the

vehicle did not pull over and after a short chase, the fleeing vehicle struck a parked vehicle. The officer identified appellant as the driver of the evading vehicle and stated that appellant exited the vehicle and escaped on foot. Police located an identification card belonging to appellant along with a cell phone in the black Hyundai.[1] Detective Goodnight developed a photo array that contained a picture of appellant and showed it to Rogers. Rogers positively identified appellant as the driver of the sedan in the robbery at the construction site.[2] Rogers also identified appellant in court.

The State charged appellant with aggravated robbery with a deadly weapon, namely a firearm. The case was tried to a jury and, in the guilt/innocence phase, the trial court admitted over objection evidence of an extraneous offense involving another armed robbery with a shooting in which appellant was a suspect. As discussed in more detail below, the trial court held that appellant opened the door to the extraneous offense by challenging his identity as the perpetrator of the charged offense in his counsel's opening statement and in cross-examination of several witnesses. The jury found appellant guilty of aggravated robbery as charged in the indictment. At the conclusion of the punishment phase, the jury assessed punishment at confinement for fifteen years in the Institutional Division of the Texas Department of Criminal Justice and no fine. The trial court signed a judgment based on the jury's verdict and this appeal followed.

---

[1] The vehicle was a 2012 Hyundai Elantra that had been reported stolen from a dealer. Although the vehicle involved in the evading arrest incident was identified in the police report as a 2012 Hyundai Elantra and the vehicle described in the charged offense was identified as a 2015 or 2016 Hyundai Accent, pictures of a 2012 Hyundai Elantra and a 2016 Hyundai Accent admitted in evidence reveal the vehicles are nearly identical.

[2] Goodnight also showed an array with appellant's photo in it to Olivares, though Olivares did not identify anyone in the array.

ANALYSIS

In his first issue, appellant argues the trial court erred in admitting the evidence of the extraneous offense related to the armed robbery with a shooting because counsel did not open the door to the admission of the evidence, and also because the evidence failed to meet the requirements for admission under Texas Rule of Evidence 404(b).  In his second issue, appellant argues in the alternative that if defense counsel opened the door to the admission of the extraneous offense, he received ineffective assistance of counsel because defense counsel admitted he did not intend to and had no strategic reason for opening the door to the extraneous offense.  We address each issue in turn.

## I.    The admission of the extraneous offense was not reversible error.

At trial, the court permitted the State, over repeated objection,[3] to introduce evidence from Raul Portillo, the complainant in the extraneous offense.  Portillo testified that on February 27, 2016 (approximately three weeks after the charged offense), he was working on cleaning out an attic in a home he owned in north Houston.  The house was under construction and he placed a ladder against the house on the front porch to access the attic.  While Portillo was in the attic, two males approached on foot and one of them, the taller one, climbed up the ladder demanding Portillo's wallet.  Portillo threw money down to the floor, at which point the man went down the ladder and attempted to start Portillo's truck.  The shorter assailant then went up the ladder with a gun and shot Portillo in the throat.  The shorter assailant was wearing a tank top and Portillo did not mention seeing any tattoos.  After Portillo fell down to the floor, the taller man came over and shot Portillo in the side.  The two men left and Portillo called for help.  Portillo

---

[3] The parties discussed the admission of the extraneous offense at length with the trial court and the trial court granted appellant a running objection to the admission of the evidence.

identified the shorter assailant in court as appellant. When Portillo described the shorter assailant to police, however, he described the shorter assailant as looking like Mexican boxer Canelo Alvarez, whom photos showed to be a red-headed Caucasian-looking individual who looked nothing like appellant.

Several months after the Portillo robbery, police scheduled an appointment with Portillo to show him a lineup. Unbeknownst to police, just two days before the appointment, an unknown person identified herself as an investigator and texted a photo of appellant to Portillo. Without telling police about the texted photo, Portillo then identified appellant in a photo array as his assailant.[4] The officer investigating the Portillo robbery and shooting acknowledged that showing the photo of appellant to Portillo before the photo array would "ruin" the case and irreparably tainted the identification. After Portillo testified, the trial court gave a limiting instruction to the jury to consider the evidence only if the jury believed beyond a reasonable doubt that appellant committed the extraneous offense, and to consider it only for purposes of identity in the charged offense.

In his first issue, appellant contends the trial court erred in the admission of the Portillo extraneous offense. We review a trial court's ruling on the admissibility of an extraneous offense for an abuse of discretion. *De la Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *see Mason v. State*, 416 S.W.3d 720, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *De la Paz*, 279 S.W.3d at 343–44. A trial court's ruling admitting evidence of extraneous offenses generally is within the zone of reasonable disagreement if the evidence shows that (1) the extraneous offense is relevant to a material, non-

---

[4] Portillo stated that he also had the photo of appellant on his cell phone while he was testifying on the stand.

5

propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.* at 344.

Evidence of an extraneous-offense may be admissible if it logically serves to make more or less probable (1) an elemental fact, (2) an evidentiary fact that inferentially leads to an elemental fact, or (3) rebuts a defensive theory. *See Mason*, 416 S.W.3d at 740; *Hartsfield v. State*, 305 S.W.3d 859, 871 (Tex. App.— Texarkana 2010, pet. ref'd). The trial court here ruled that the Portillo extraneous evidence was admissible to prove identity. Identity is one of the listed categories that may make an extraneous offense relevant. *See* Tex. R. Evid. 404(b)(2) (extraneous offenses admissible if relevant to other matters, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident"); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

## A.    Trial counsel opened the door.

The trial court held that appellant's counsel opened the door to the extraneous evidence in his opening statement and through cross-examination. Appellant argues that counsel did not open the door because the statement in opening was akin to arguing the State could not meet its burden of proof and cross-examination was not sufficiently vigorous on identity to open the door. We disagree.

Defense counsel may open the door to evidence of an extraneous offense by statements made in the opening statement. *See Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016); *Mason*, 416 S.W.3d at 740. Likewise, when an appellant vigorously challenges identity through cross-examination, evidence of an extraneous offense is admissible to rebut a claim of mistaken identity. *Mason*, 416

6

S.W.3d at 740 (citing *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008)).

In his opening statement, counsel for appellant told the jury that the evidence would show the police failed to conduct a sufficient investigation to make sure appellant is the "right guy sitting here" and "that the real perpetrator is brought to justice and that we don't have the wrong guy sitting in court today." Counsel further stated: "The evidence is going to show that they have not brought you a worthy case for that *and that they have the wrong guy. We're going to have explanations through the evidence of why the defendant was misidentified.*" (emphasis added). These statements were sufficient to raise the issue of identity and open the door to the admission of the extraneous offense. *See Dabney*, 492 S.W.3d at 317; *Leassear v. State*, 465 S.W.3d 293, 303 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Throughout trial, appellant also raised the issue of identity as a defense by vigorously cross-examining witnesses regarding the reliability of the in and out of court identifications. Counsel questioned Rogers at length regarding his ability to see the driver of the vehicle, the driver's tattoos, how long he was able to view the driver, and the procedure used when Rogers identified appellant in the photo array. Counsel established on cross-examination of Detective Goodnight that Olivares was not able to identify appellant, that the photo array presented to Rogers was not presented through a blind administrator, and that police developed a suspect for the auto theft attached to the paper tag 13K3380 named Kwarmaine Martin, but Goodnight did not investigate Martin. Accordingly, appellant placed his identity as the perpetrator in dispute. *See Mason*, 416 S.W.3d at 740 (identity placed in issue where defense counsel vigorously cross-examined witnesses regarding the reliability of their identifications); *see also Segundo*, 270 S.W.3d at 86 (trial court

has considerable latitude in determining that identity was disputed through cross-examination).

**B.    Any error in the admission of the extraneous offense was harmless.**

When the State seeks to introduce an extraneous offense to prove identity, the offense must be so similar to the charged offense that the offenses show the defendant's "'distinctive and idiosyncratic manner of committing criminal acts.'" *Mason*, 416 S.W.3d at 740 (quoting *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006)). "Such extraneous offense evidence is admissible to prove identity when the common characteristics of each offense are so unusual as to act as the defendant's signature." *Id.* (internal quotations omitted). Courts determine whether sufficient similarity exists based on a comparison of the circumstances involved in both cases and the time interval between them. *See id.*

Appellant argues the extraneous offense and the charged offense were not sufficiently similar. We will assume, without deciding, that the trial court erred in admitting the extraneous offense. We nevertheless conclude the error is not reversible because the record reveals no harm to appellant.

The erroneous admission of an extraneous offense is non-constitutional error that should be disregarded unless it affected the appellant's substantial rights. Tex. R. App. P. 44.2(b); *Banks v. State*, 494 S.W.3d 883, 895 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In assessing harm, we consider harm in light of the entire jury charge, the evidence, and the record as a whole. *See Banks*, 494 S.W.3d at 895. Factors to be considered include (1) the nature and sufficiency of the evidence supporting the verdict; (2) the character of the error and how it might be considered in connection with other evidence in the

case, and (3) whether the State emphasized the error. *See Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). If the error had no influence or only a slight influence on the verdict, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In this case, there was sufficient evidence of appellant's identity as the driver in the charged offense. Rogers was able to see appellant's identifying tattoos during the robbery and provided a positive identification of him through a photo array and in court. Appellant was observed to be driving a black Hyundai sedan with the same paper plate number as that used in the charged offense. With regard to the character of the error, it is significant that appellant's counsel was able to expose the weaknesses in the identity of appellant as the perpetrator of the extraneous offense by showing that the identification of appellant was tainted and inconsistent with Portillo's original description of the suspect.

The State did discuss the extraneous offense in its closing argument, but the record as a whole suggests the jury did not give the argument credence. Appellant faced a punishment of incarceration between five to ninety-nine years. In his closing argument in the punishment phase, appellant's counsel told the jury that an appropriate amount of punishment for the charged offense would be ten or fifteen years. In response, the State argued that the jury should only give a "short sentence" of ten to fifteen years if the jury felt the defendant could be rehabilitated, but that people like appellant, who are "willing to kill for almost nothing" cannot be rehabilitated. The jury assessed punishment at fifteen years' incarceration. Given that the jury assessed fifteen years as punishment, which is on the lower end of the permissible punishment range, we are confident that the jury did not give much, if any, credence to the extraneous offense. We conclude any error in the admission of the extraneous offense was harmless.

9

We overrule appellant's first issue.

## II.     Appellant did not receive ineffective assistance of counsel.

In his second issue, appellant argues that his counsel, by opening the door to the extraneous offense, rendered ineffective assistance of counsel because counsel admitted that he did not have a strategic reason for doing so. We conclude that appellant has not established ineffective assistance of counsel.

## A.     Standards of review

In reviewing claims of ineffective assistance of counsel, we apply a two-part test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that: (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id*. When evaluating a claim of ineffective assistance, we consider the totality of the representation and the particular circumstances of the case. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740.

At a hearing on the admissibility of the extraneous offense, counsel for appellant stated that he did not intentionally open the door to the extraneous offense and that to do so would be "massive ineffective assistance of counsel." Counsel also stated, however, that identity was "the entire case" and that he did not know what questions he could ask of any witness that would not raise the issue of

identity. Thus, counsel did have a trial strategy in asking the questions that opened the door—to present the only defense appellant had to the charged offense. We faced a similar ineffective assistance argument in *Bass v. State*, where the appellant challenged her attorney's decision to put the appellant on the stand, which in turn opened the appellant to cross-examination on prior convictions and extraneous offenses. 713 S.W.2d 782, 785 (Tex. App.—Houston [14th Dist.] 1986, no pet.). We concluded that counsel was not ineffective in doing so, because establishing lack of intent, which was appellant's only real defense, was a plausible trial tactic and the court will not second-guess the wisdom of a plausible trial tactic. *See id.* Likewise, we conclude that appellant's counsel in this case was not ineffective by presenting evidence and questioning witnesses on identity when identity was the only real defense, even though it may have opened the door to an extraneous offense. Defense counsel was prepared for the admission of the extraneous offense and in fact impeached the identity of appellant made by Portillo in the extraneous offense.

Appellant also argues that counsel was ineffective for failing to ask the trial court to instruct the jury to disregard the evidence of the extraneous offense. We disagree. By objecting repeatedly and obtaining rulings overruling his objections to the extraneous offense evidence, counsel preserved the issue for review, and there was no need to request an instruction to disregard. *See Hicks v. State*, 837 S.W.2d 686, 691 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (holding counsel not ineffective for failing to request instruction to disregard hearsay evidence where counsel timely objected and trial court overruled objection). The trial court gave a limiting instruction when the extraneous evidence came in and again in the jury charge, instructing the jury to only consider the evidence if it found beyond a reasonable doubt that appellant committed the extraneous offense and only for

11

purposes of identity. Counsel was not deficient for failing to request an instruction to disregard the evidence of the extraneous offense. *Id.*

Further, we conclude appellant has not shown by a preponderance of the evidence a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. As explained in Section I(B) above, the jury did not appear to take the extraneous offense into account.

We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's two issues on appeal, we affirm the trial court's judgment.


/s/     Jerry Zimmerer
          Justice


Panel consists of Justices Christopher, Zimmerer, and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).